[No. 2175. Decided May 21, 1896.]

THE STATE OF WASHINGTON, *Respondent*, v. THEODORE
CUSHING, *Appellant*.

HOMICIDE — SELF-DEFENSE — EVIDENCE — THREATS BY DECEASED —
CHARACTER OF DECEASED — WITNESS — PROOF OF REPUTATION —
CONSULTATION OF JURY.

It is not incumbent upon one assailed while on his own premises outside of his dwelling-house to retreat, or consider whether a retreat can be safely made, before availing himself of the right of self defense, where he has reasonable grounds to believe, and does in good faith believe, that his assailant intends to take his life or do him great bodily harm.

Threats made by deceased against defendant in a prosecution for murder, whether uncommunicated or made directly to defendant, are admissible upon the question whether or not deceased was the first assailant and whether or not he so acted at the time of the shooting as to induce in the mind of defendant an honest belief that deceased intended to kill him or do him great bodily harm.

Evidence of the reputation of defendant for peace and quietude is admissible, in a prosecution for murder, on the question as to who was the aggressor in the affray in which the homicide was committed; and defendant is entitled to have the jury charged as to the weight to be given to such evidence.

In a prosecution for murder, the clothing worn by deceased at the time he was shot, and the gun with which the shooting was done, are admissible in evidence, and may properly be taken by the jury to their room, when they retire to consider their verdict.

Evidence of the reputation of a witness for truth and veracity in a city five or six miles from his residence may be shown in rebuttal of evidence attacking his character in that respect, where he does business in such city and has acquired a reputation for truth and veracity therein.

Appeal from Superior Court, Spokane County.—
Hon. NORMAN BUCK, Judge. Reversed.

*Blake & Post*, and *Patrick Henry Winston*, for appellant. .

*J. W. Feighan*, Prosecuting Attorney, for The State.

The opinion of the court was delivered by

GORDON, J.—The appellant was charged, in the superior court for Spokane county, with the murder of Thomas King. He was convicted of murder in the second degree and sentenced to imprisonment in the penitentiary for a period of ten years. From this judgment he appeals. The appellant admits that he did the shooting which caused the death of the deceased, but claims that he did it in self-defense. The shooting occurred upon the premises of the appellant near the city of Spokane. There were no eye-witnesses to the fatal encounter. It appeared from the evidence that the deceased had been in the employ of the appellant on the farm where the killing occurred; that he had been so employed for a period of about eight months immediately preceding the day of the homicide. It further appears that he did not live on the premises, but kept house with another bachelor on an adjoining farm. On the morning of the 14th of May, 1895, the day on which the shooting occurred, the deceased put in an appearance at the home of the appellant as usual, and asked for the amount of wages that was then due him. A wordy dispute followed between the parties. Upon his own behalf the appellant testified that he told deceased that he did not then have the money to pay him; that he would do so on the following day; that thereupon the deceased became abusive and threatened the ap-

pellant with violence; that he continued to follow the appellant from place to place about the premises from about half past seven in the morning until about 11:30, when the shooting actually occurred. He further testified that he repeatedly ordered the deceased from his premises and that he refused to go; that King's conduct continued to become more violent and that, becoming alarmed and fearful for his own safety, the appellant went into his house and procured his shot gun, for the double purpose, as he says, of defending himself against any attack that King might make upon him, and in the belief that finding him armed King would withdraw from the premises; that when he appeared outside of the house with the gun the deceased rushed upon him armed with a club uplifted in his hand; that thereupon he, appellant, fired, "aiming low with a view to disable him, not to kill him." This shot took effect in the legs of the deceased. Continuing, the appellant testified as follows:

"The instant that the shot was fired he raised his head up and came for me with the club uplifted and muttering curses, and I thought he had not been hit, and I immediately proceeded to re-load. During the time that I was reloading he had gotten up to just a few feet of me; I don't think it was over eight or ten feet, and when I fired this time he repeated his movement, (that is, ducking his head and turning his body), only this time he bent further down."

The second shot was received by the deceased in the back a little below the kidney on the right side of the spinal column, from the effects of which death resulted in about four hours thereafter. Although conscious and able to converse until final dissolution came, the deceased gave no account of the circumstances leading to the shooting. The testimony also

34 — 14 WASH.

tended to show that the appellant, immediately after the shooting, in answer to a question as to how it occurred, stated in the presence and hearing of King that he, appellant, "had to do it;" that he did it in self-defense; to which statement King made no response.

Counsel for the appellant requested the trial court to give the following instruction to the jury:·

" The defendant while on his· own premises outside of his dwelling-house, was where he had a right to be, and, if you find that the deceased advanced upon him in a threatening manner and the defendant at the time had reasonable grounds to believe and in good faith did believe that the deceased intended to take his life or do him great bodily harm, the defendant was not obliged to retreat nor to consider whether he could safely retreat, but was entitled to stand his ground and meet any attack made upon him in such a way and with such force as, under all the circumstances, he at the moment honestly believed and had reasonable grounds to believe was necessary to save his own life or protect himself from great bodily injury."

The court refused to so instruct, and appellant excepted. Upon its own motion, however, the court instructed as follows:

" Before a person can justify taking the life of a human being by self-defense, he must employ all reasonable means within his power consistent with his own safety, to avert the necessity for the killing."

We think that this instruction, in connection with the entire charge, might reasonably have tended to create the impression upon the minds of the jurors that it was the duty of the appellant, notwithstanding that he was upon his own premises where he had the lawful right to be, to retreat from any assault then being made or threatened by the deceased; and this impression is strengthened by the fact that the in-

struction requested by the appellant and refused by the court contained a correct statement of the law upon the subject, as laid down by the supreme court of the United States in the case of *Beard v. United States*, 158 U. S. 550 (15 Sup. Ct. 962), and supported in *Baker v. Commonwealth*, 93 Ky. 302 (19 S. W. 975); *Runyan v. State*, 57 Ind. 80 (26 Am. Rep. 52); *Miller v. State*, 74 Ind. 1; *Erwin v. State*, 29 Ohio St. 186 (23 Am. Rep. 733); *Bohannon v. Commonwealth*, 8 Bush, 481 (8 Am. Rep. 474); *White v. Territory*, 3 Wash. T. 397 (19 Pac. 37); *Williams v. State*, 30 Tex. App. 430 (17 S. W. 1071); *Fields v. State*, 134 Ind. 46 (32 N. E. 780).

Not only does the instruction under consideration contain a correct statement of the law, but it was applicable to the evidence, and it was the right of the defendant to have it or some equivalent instruction submitted to the jury.

2. There was evidence tending to show that the deceased had, prior to the morning of the encounter, in conversation with different parties, made threats against the appellant, none of which, however, were communicated to the appellant. It further appeared by the testimony of the appellant himself, that on the morning of the encounter the deceased made repeated and violent threats against him. The following instruction upon the subject of threats was requested and refused:

"Uncommunicated threats are only valuable in a case of this kind as tending to show the feelings and interest of the deceased towards the defendant at the time of their encounter, and whether or not the deceased was the first assailant, and whether or not the deceased so acted at the time of the shooting as to induce in the mind of the defendant an honest belief that the deceased intended to kill him or do him great

bodily harm. Communicated threats and threats made to defendant are valuable for the same purpose, and as also tending to throw light on the state of mind of the defendant at and just before the shooting, and as tending to show that his acts in shooting were not malicious."

This instruction was approved by the territorial supreme court in *White v. Territory, supra,* and is sustained by *Brown v. State,* 55 Ark. 593 (18 S. W. 1051); *Wiggins v. People,* 93 U. S. 465. We think it correctly states the law upon the subject of noncommunicated threats and threats made directly to a defendant. The court, however, refused to give it or any instruction whatever upon the subject. This we think was error.

The learned attorney for the state insists, however, that the threats were inadmissible because there was no proof aside from the testimony of appellant of any attack by the deceased, or that the appellant was, at the time of the shooting, in imminent danger; that, "leaving out Cushing's [appellant's] testimony, which is contradicted by all the circumstances in the case, there was no attempt on the part of King to injure Cushing." But it was the right of the appellant to have his testimony weighed and passed upon by the jury, and an instruction applicable to it could not properly be refused by the court solely upon the assumption that such testimony was false.

3. Upon the trial the appellant called numerous witnesses who testified that his general reputation was that of a peaceable and well-disposed person. Based upon this evidence his counsel requested the court to give the following instruction to the jury:

" You are instructed that the defendant is entitled to have the evidence touching the question of his reputation for piece and quietude considered by the jury

in determining the question of his guilt and especially in determining the question as to who was the aggressor in the affray in which King lost his life. In such cases, proof of good reputation for peace and quietude on the part of the defendant is proper evidence to be considered by the jury in connection with all the other evidence. In determining the guilt or innocence of the accused, the weight to be attached to the fact of good character or reputation, like that to be attached to every other fact of the case, is for the jury alone to determine."

This was refused by the court and no instruction upon the subject was given to the jury. The appellant excepted to the refusal to so instruct and has assigned it as error. We think the instruction should have been given. In *State v. Dumphey*, 4 Minn. 438, it is stated that proof of the good charcter of the appellant is received upon the ground that, " as all reasonable doubts are to be weighed in the balance in favor of the defendant, he is, therefore, entitled in all cases to give his good character in proof, because what would be a clear state of facts and circumstances to warrant a conviction against a man of bad or unknown character, might, when applied to a man of high standing and unimpeachable character, appear inconsistent with his guilt, or so enshroud the transaction with doubt as to justify an acquittal."

We think it too well settled to admit of any doubt or controversy that a defendant in a criminal case may introduce evidence of his good character (with respect to the elements involved in the charge against him) as a fact to weigh in his favor, and that he is entitled, if he requests it, to have the jury advised as to the weight to be given to such evidence. 2 Thompson, Trials, 2444; *Kistler v. State*, 54 Ind. 400; *State v. Clemons*, 51 Iowa, 274 (1 N. W. 546); *McQueen v. State*,

82 Ind. 72; *People v. Laird*, 102 Mich. 135 (60 N. W. 457; *People v. Jassino*, 100 Mich. 536 (59 N. W. 230).

In this last case the court say:

"Evidence of good character is admissible not only in a case where doubt otherwise exists, but may be offered for the purpose of creating a doubt."

It will not do to say that inasmuch as it appears from the verdict that the jury disbelieved the testimony of the appellant, the instruction, if given, would have been unavailing. What the jury would have done had they been furnished with proper lights for their guidance, can only be conjectured. Appellant was entitled to have this instruction given to the jury as a matter of law necessary for their information in arriving at a verdict, and especially so in view of the nature of the charge and the testimony adduced in its support. Nor is the question at all affected by the fact that there may have been some testimony given which reflected upon his character.

4. Other instructions requested by appellant but refused by the court, as well as the instructions actually given, have been examined, but aside from those already noticed we do not think that any error was committed in connection with the charge. Many of the requests were proper and appropriate to the evidence, but as to them we find that they were sufficiently embraced within the general charge of the court, and hence no error was committed in refusing them.

5. As this cause must be retried, we deem it necessary to examine some of the more important questions arising upon the introduction of the evidence at the trial. The clothing worn by the deceased at the time of the shooting, and the gun with which the shooting was done, were admitted in evidence over the objection of the defendant, and this is assigned as error.

We think that the state was entitled to introduce them, and that no error was committed in permitting the jury to take them to their room when they retired to consider their verdict. *Doctor Jack v. Territory*, 2 Wash. T. 101 (3 Pac. 832).

6. Nor do we think it was error for the court to refuse to permit appellant to ask the witness Rinear concerning a conversation which occurred between the witness and Wells and Newman. It was not cross-examination, and the appellant should have called Wells and Newman, if he desired their opinion upon the question of what caused the mark found upon the pine tree.

7. We think that the court erred in refusing to permit the witness Brill to testify to the reputation for truth and veracity of W. J. Newman, a witness for the defendant, whose reputation the state had attacked. If, in the course of business or otherwise Newman had acquired a reputation for truth and veracity in the city of Spokane, it was competent to be given in evidence, although his place of residence may have been distant therefrom some five or six miles, as shown.

Other errors assigned have been examined, but we do not find that they are of sufficient importance to merit extended consideration.

For the errors above noticed the judgment will be reversed and the cause remanded for a new trial.

ANDERS and DUNBAR, JJ., concur.