[No. 8043.   Department Two.   July 29, 1909.]

THE STATE OF WASHINGTON, *Respondent*, v. P. C. HOSEY, *Appellant*.[1]

CRIMINAL LAW—EVIDENCE—REPUTATION OF ACCUSED—WITNESSES—COMPETENCY—RAPE. Witnesses who are well acquainted with the accused, and can testify that he is a good citizen "because he behaves himself, or is a moral man," are competent to testify to his reputation for good character and chastity, although they had not heard it discussed by others, and based their evidence on observation alone; especially in a prosecution for statutory rape.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered March 21, 1907, upon a trial and conviction of statutory rape. Reversed.

[1]Reported in 103 Pac. 12.

*Lester P. Edge* and *Joseph McCarthy*, for appellant.

*Fred C. Pugh, Don F. Kizer,* and *Chas. G. Cromwell,* for respondent.

DUNBAR, J.—The information in this case charged the appellant with statutory rape upon one Elta Decker, a female child of the age of fifteen years. Trial was had to a jury, and a verdict of guilty as charged was rendered. Motion for a new trial was overruled, and the appellant was sentenced to imprisonment in the state penitentiary at Walla Walla for a term of six years. From a judgment of conviction, this appeal is taken.

It is assigned that the court erred in excluding the testimony of B. D. McDonald and of Austin Ready, in refusing to give certain instructions, and in permitting the prosecuting attorney, over the objection of defendant after the trial had commenced, to indorse upon the information the name of Briley as one of the witnesses for the state, and allowing Briley to testify during the trial.

For the purpose of proving the good character of the appellant, the witness McDonald was called. The appellant had resided with the witness McDonald and his family for the greater part of the year preceding the trial. On direct examination, McDonald testified that he knew what appellant's general reputation was for good citizenship and chastity, and that the same was good. On cross-examination the witness testified as follows:

"Q. How do you get at it? How do you tell what a man's reputation is? A. What I know of him. Q. Your observation of him? A. Yes, sir. Q. And talking with him? A. Yes, sir. Q. Knowing where he is and where he isn't? A. Yes. Q. You feel that you know about this young man? A. All that I know of him I have never seen anything wrong. Q. And that is what you are testifying from, what you know of him? A. Yes, sir. Q. From your personal observation during the time he has lived with you? A. Yes, sir. Q. What do you know about his good citizenship? A. As far as I know he is a good citizen. Q. What do you know about his

good citizenship? A. I never seen anything wrong with him. Q. In what respect is he a good citizen? A. A man that behaves himself; behaves himself in every respect as long as I have known him."

The court instructed the jury that the testimony of Mr. McDonald should not be regarded by them, and it was thereby taken from their consideration. Mr. Ready, a prominent citizen of Spokane, testified that he had known the appellant in Spokane and other places for a period of twelve or fifteen years; that he had frequently seen him and talked with him in Spokane; that he had talked to Mr. McDonald about him, and that they were much impressed with him. Being asked by counsel: "Had he [appellant] been an immoral man would you have known it," the state interposed an objection, which was sustained by the court.

Under the old rule, it may be conceded that the testimony of these witnesses, especially of the witness McDonald, would not have been considered material; but that strict rule has been very much relaxed, and we think with good reason; for reputation, such as was proved under the old rule, was only what a certain given number of people thought about a man, and was but an enlargement in numbers of what one man thought or knew about him, and there seems to be no good reason why the opinion and knowledge of the one man should be excluded because he is not able to duplicate that opinion by giving the names of others who have expressed their opinion as to his reputation. It is said in 3 Ency. of Evidence, p. 43:

"By the great weight of current authority, one who has been personally acquainted with another for a considerable length of time and who has been in a position where he probably would have heard that other's reputation talked about were it the subject of comment, and who has never heard it questioned, may testify to the good character of such person;"

citing many cases to sustain the text; among others, *Foerster v. United States*, 116 Fed. 860, where it was held that the

fact that one who has long been acquainted with a witness and his associates has never heard any discussion or remarks concerning his character, is excellent evidence of his good character and good reputation; and that the testimony that one's reputation for truth and veracity is good, is not rendered incompetent by the statement of the witness on cross-examination that it had never been brought up to him before, the trial court in passing on the objection to the testimony saying: "A person whose reputation is good is never discussed; but a man whose reputation is bad is discussed among others." The appellate court held that this was a proper ruling by the trial court, saying:

"This ruling, and the remarks accompanying it, are specified as error. But the ruling was right, and the remarks of the court stated a well-settled rule of evidence. The reputation and character of one who quietly and faithfully discharges his legal, civil, and religious duties give little occasion for remark, and are seldom the subject of discussion. Common experience teaches us that the fact that one's character and reputation are not discussed is excellent evidence that they give no occasion for censure, and that they are good, and this is the established rule of law."

The announcement of the court in that case might well apply to the answer made by the witness to the question, "In what respect is he is good citizen?" viz: "A man that behaves himself; behaves himself in every respect as long as I have known him." The court in that case, among other authorities, cited Jones on Evidence, § 865, where it was said:

"But it is not a necessary condition that he should have heard the reputation of the witness discussed or called in question, since it is to be presumed that those who are well acquainted with the witness and his associates would have heard of the fact, if his reputation for veracity was often assailed, or called in question. If the testimony were not allowed under such circumstances, the most respectable man in the community might fail in being supported, if his character for truth should happen to be attacked. Living all his life above suspicion, his truth would rarely be the subject

of remark. A neighbor might be obliged to admit, as in this case, that he had never heard it spoken of, and yet be undoubtedly competent to sustain him."

This is also the rule of law announced by 3 Rice on Evidence, § 380, where it is said:

"The propriety of the rule, permitting negative evidence of good character, is gradually forcing itself upon the recognition of the courts, and there is a current and modern authority rapidly forming in support of it. Mr. Taylor, in his work on Evidence, after observing that the term 'character' is not synonymous with 'disposition,' but simply means reputation, or the general credit which a man has obtained in public opinion, observes as follows of the practice of the English judges to this point: 'Aware that the best character is generally that which is the least talked about,' they have found it necessary to permit witnesses to give negative evidence on the subject, and to state that 'they have never heard anything against the character of the person on whose behalf they had been called.' 'Nay, some of the judges,' he continues, 'have gone so far as to assert that evidence in this negative form is most cogent proof of a man's good reputation,'"

citing *Reg v. Cory*, 10 Cox C. C. 23, where it was said by Cockburn, Ch. J:,

"I am ready to admit that negative evidence to which I have referred, of a man saying 'I never heard anything against the character of the person of whose character I come to speak, should not be excluded. I think, though it is given in a negative form, it is the most cogent evidence of a man's good character and reputation, because a man's character does not get talked about until there is some fault to be found with him. It is the best evidence of his character, that he is not talked about at all. I think the evidence is admissible in that sense."

In *State v. Lee*, 22 Minn. 407, 21 Am. Rep. 769, the court announces that the strict and technical rule which we have before mentioned has become relaxed, saying:

"A very sensible and commendable instance of the relaxation of the old and strict rule is the reception of negative

evidence of good character—as, for example, the testimony of a witness who swears that he has been acquainted with the accused for a considerable time, under such circumstances that he would be more or less likely to hear what is said about him, and has never heard any remark about his character—the fact that the person's character is not talked about at all being, on grounds of common experience, excellent evidence that he gives no occasion for censure, or, in other words, that his character is good."

In further discussion, the court said:

"As it is, then, the *fact* of disposition which is important and material, there can be no reason why this fact may not be proved by any witness who knows what it is. There is certainly no reason why general repute is not better or more satisfactory evidence of disposition than the testimony of one who knows what the disposition in question is from his own personal observation. If it could properly be objected that the latter kind of testimony would be matter of opinion, a like objection might be made to evidence of general repute as but an aggregation of opinions. But evidence of the disposition of a person, by one who knows such disposition from personal observation, is not evidence of opinion in any objectionable sense."

It would seem useless to quote further authority. The whole trend of modern opinion is in the direction which we have indicated, and we think, therefore, that the court erred in taking the testimony of McDonald and Ready from the jury, as the character of the appellant was a question which should have gone to the jury. It may appropriately be said that, in this kind of a case, which it is difficult to defend against, and where a man's character might be the only defense that he could present to the jury, courts ought not to be too technical in rejecting testimony tending to prove character.

We have examined the other assignments of error, but considering the instructions asked in connection with the instructions already given by the court, we think no error was

committed in denying the instructions asked for, or in any other particular.

But for the reasons assigned, the judgment will be re-versed.

RUDKIN, C. J., MOUNT, CROW, and PARKER, JJ., concur.