[No. 31416.   Department Two.   November 16, 1950.]

THE STATE OF WASHINGTON, *Respondent*, v. LEON AXELSON, *Appellant*.[1]

*Pemberton & Orloff*, for appellant.

*Boone Hardin* and *Tom A. Durham*, for respondent.

MALLERY, J.—On the night of November 20, 1949, at approximately 9:45 p. m., the prosecuting witness was walking along State street, in the city of Bellingham. It was deserted. She testified that after she passed the Armory she

". . . saw something crouched coming down the center of the street, and . . . I thought it was our dog, . . . and right then the man came walking down the street toward me, . . . and he ran up to me and put his arm around me and put his hand over my mouth and he said: 'I want to talk to you,' and he kept pushing me backwards, and right behind me was a big bank . . . and he kept working me backwards and I was struggling and I had my bag in my hand, and I . . . hit his face as hard as I could and his hand slipped away from my mouth and I let out an awful scream and, . . . he reached up with his fist and hit me . . . on the cheek with his fist, and I fell to the ground . . . ."

[1] Reported in 223 P. (2d) 1059.

Shortly after the prosecuting witness started screaming, neighbors came out to investigate. One of these, Miss Flournoy, testified that as she stepped out on the porch a man ran by. She asked him twice if he had heard the screams, and he finally answered that he had, but continued running away from the scene of the attack. Miss Flournoy later identified the defendant as the man she had spoken to, by his voice and clothing. The defendant was apprehended shortly afterwards by the police, who had arrived upon the scene. He was identified by the prosecuting witness, both at the time of arrest and in the police line-up at the station, as the man who had assaulted her. Her description of the clothes the defendant was wearing, at the time of the assault, tallied with the description Miss Flournoy gave in regard to the man seen running from the scene.

The defendant was charged, by information, with assault with intent to commit rape.

A trial to a jury resulted in a conviction, and the defendant appeals.

The appellant contends that the court erred in excluding, in its entirety, the testimony of his character witness Murphy concerning the appellant's good reputation for being a peaceful and law-abiding citizen. The disputed testimony is as follows:

"Q. Do you know the defendant in this case? A. Yes, I do. Q. How long have you known him? A. About sixteen years. Q. That is here in Bellingham? A. Yes. Q. Do you know the defendant's reputation for being a peaceful and law abiding citizen in this community? A. Yes, I do. Q. What is his reputation? A. Well, it is very good. Q. Do you know his reputation for truth and veracity? A. Yes. Q. What is that reputation? A. Good, as far as I know. MR. ORLOFF: That's all.

"CROSS EXAMINATION BY MR. DURHAM: Q. Have you discussed his reputation? A. No. I never had any reason to. MR. DURHAM: I move the testimony be stricken. THE COURT: Granted. MR. ORLOFF: May I ask the witness another question? THE COURT: Yes.

"RE-DIRECT EXAMINATION, BY MR. ORLOFF: Q. Have you ever heard anything bad about the defendant in this community? A. I certainly have not. Q. Did you go to school

with the defendant? A. Yes, I did. Q. And you have known him in school and otherwise? A. Yes. He has been trading at the station with me. Q. Have you known friends of this defendant? A. Yes. Q. Have you ever talked to them about the defendant? MR. DURHAM: He has answered that question. MR. ORLOFF: He hasn't answered that. A. My partner there, just him and I talked it over. He has known him as long as I have, but no outsiders. I mean I have never had any reason to. Q. How long has your partner known the defendant? A. The same length of time I have known him. MR. ORLOFF: That's all. Your Honor, I believe, under the circumstances, the testimony is competent. THE COURT: The testimony will be stricken and the jury instructed to disregard it. MR. ORLOFF: You mean the entire testimony, Your Honor? THE COURT: That's correct."

In *State v. Hosey*, 54 Wash. 309, 103 Pac. 12, 22 L. R. A. (N.S.) 670, the court quoted the following excerpts, with approval:

" 'By the great weight of current authority, one who has been personally acquainted with another for a considerable length of time and who has been in a position where he probably would have heard that other's reputation talked about were it the subject of comment, and who has never heard it questioned, may testify to the good character of such person;' " 3 Ency. of Evidence, p. 43.

" '. . . The reputation and character of one who quietly and faithfully discharges his legal, civil, and religious duties give little occasion for remark, and are seldom the subject of discussion. Common experience teaches us that the fact that one's character and reputation are not discussed is excellent evidence that they give no occasion for censure, and that they are good, and this is the established rule of law.' " *Foerster v. United States*, 116 Fed. 860.

" 'But it is not a necessary condition that he should have heard the reputation of the witness discussed or called in question, since it is to be presumed that those who are well acquainted with the witness and his associates would have heard of the fact, if his reputation for veracity was often assailed, or called in question. . . .' " Jones on Evidence, § 865.

Cross-examination of a character witness may be for the purpose of showing a lack of testimonial knowledge, which, if established, warrants the court in striking the

witness' testimony in its entirety. In the instant case, the cross-examination did not establish a lack of testimonial knowledge. The basis of the exclusion seems to be that the witness had never *discussed* the appellant's reputation with others. In this situation, the credibility of the witness and the weight to be given to his testimony may be affected by the cross-examination, but such considerations do not warrant striking it. It was reversible error to do so.

The appellant contends that the state failed to make out a *prima facie* case, as to a specific intent to commit rape. We concede that the evidence produced approaches the minimum requirements of the law. In *State v. Brown*, 19 Wn. (2d) 195, 142 P. (2d) 257, we quoted, with approval, the following:

" 'Where it takes a particular intent to constitute a crime, that particular intent must be proved to the satisfaction of the jury. It does not require direct or positive proof, but the circumstances must be such as would authorize the jury . . . to infer the intent with which the act was done.' " *Patterson v. State*, 85 Ga. 131, 11 S. E. 620.

■ The particular intent here invoked is the intent to commit rape. When circumstances are proven beyond a reasonable doubt, which are consistent with each other and with the existence of such an intent, and are inconsistent with any reasonable hypothesis that would negative it, the jury is authorized to infer the specific intent. *State v. Brown, supra*. We are not prepared to say, as a matter of law, that the jury was unauthorized to infer an intent to commit rape in this case.

We do not discuss the appellant's other assignments of error, since we do not anticipate the issues raised will reoccur upon the retrial of the case.

The judgment is reversed, and the cause is remanded for a new trial.

ROBINSON and GRADY, JJ., concur.

HILL, J. (concurring in the result)—I concur in the result. I agree with the majority that the trial court erred in striking the testimony of the character witness Murphy.

I believe, further, that the trial court should have instructed the jury that, to constitute the crime of assault with intent to commit rape, there must be not only an assault but an intention by the defendant to gratify his passion on the person of the woman at all events and notwithstanding any resistance on her part. 44 Am. Jur. 917, Rape, § 24. Such an instruction was requested, and it was prejudicial error not to give it.

SCHWELLENBACH, J., concurs with HILL, J.