[No. 53640-6.   En Banc.   July 7, 1988.]

THE STATE OF WASHINGTON, *Respondent*, v. DOUGLAS ROOSEVELT THOMAS, *Petitioner*.

---

*Neil M. Fox* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Linda K. Jacke, Deputy,* for respondent.

BRACHTENBACH, J.—The defendant was convicted of third degree rape. The Court of Appeals affirmed. *State v. Thomas,* 46 Wn. App. 280, 730 P.2d 117 (1986), *review granted,* 108 Wn.2d 1001 (1987). We affirm.

The sole issue raised by the petition for review is whether the trial court must instruct on character evidence when the defendant has introduced relevant character testimony. Defendant contends the failure to give his requested instruction is contrary to the holding in *State v. Allen,* 89 Wn.2d 651, 574 P.2d 1182 (1978).

Defendant requested the following instruction:

Evidence of the defendant's good character may be sufficient to raise a reasonable doubt whether the defendant is guilty, where doubt would otherwise not exist.

Clerk's Papers, at 19.

The trial court gave no instruction dealing specifically with character evidence. The given instructions did instruct the jury to consider *all* the evidence and that a reasonable doubt could exist after "fully, fairly and carefully considering *all* of the evidence". (Italics ours.) Clerk's Papers, at 18. The defendant in closing argument argued fully the testimony of defendant's character.

We conclude (1) that when justified by the evidence an instruction of the nature discussed hereafter should be given, (2) that the defendant's requested instruction was properly refused and (3) that any error was harmless.

The 14–year–old victim was a frequent visitor in the home of defendant, his wife and their two small children. On the night of the incident, the victim was asleep in a bedroom in defendant's home. Defendant left the home about 10 p.m. He and a friend returned at about 4:30 a.m. from a lengthy bout of drinking, privately and in lounges in Tacoma.

The victim heard defendant's wife ask him what he was doing at that hour. The victim then saw someone at the door of the bedroom. She asked defendant "[i]s that you Doug [defendant]?" He replied "Yes". The defendant's wife confirms the approximate time and hearing defendant and the victim talking. Shortly thereafter the victim was awakened by someone whom she positively identified as the defendant, who asked her if "she would tell?" She feigned sleep and did not answer. Again, later, she was awakened by the person who got in bed and raped her. She felt a wet and sticky liquid on her legs. There was evidence of semen and blood on the victim's underpants. The victim testified that she could not see her attacker because of darkness, but knew it was the defendant because of his large legs and chest. The other man in the house, who is implicated as the possible rapist according to the defendant, was described as skinnier than the defendant. Upon awakening later in the morning, the victim left promptly, called her mother and

informed her of the rape, reported it to the police and named defendant as the assailant.

Defendant's wife testified that defendant was drunk when he came home about 4:30 a.m., that he came into their bedroom briefly after she heard him talking to the victim, and that he said he and his friend were going out cruising. Then he left the bedroom and she did not know where he was until he came back, perhaps a half an hour later, and passed out in the bed.

The other man in the house fell asleep immediately after defendant and he decided not to go out again. He denied any contact with the victim. The defendant also denied having any contact with the victim other than speaking to her when he first came home.

In a lengthy and vigorous closing argument defense counsel dwelt at length on the State's burden of proof, he questioned whether there had even been a sexual act with the victim, alluded to her having a boyfriend, and argued that it was unlikely that she was a virgin as she testified. Counsel accused the victim and her mother of lying.

■■ Our analysis proceeds upon several established principles. First, the claimed error is not of constitutional magnitude. Second, the claimed error is not ground for reversal unless it was prejudicial. It is not prejudicial "unless, within reasonable probabilities, had the error not occurred, the outcome . . . would have been materially affected." *State v. Cunningham,* 93 Wn.2d 823, 831, 613 P.2d 1139 (1980).

Two points must be emphasized. First, the proposed instruction was properly refused. Second, even if it is assumed, arguendo, that it was error not to give *any* instruction on the effect and rule of character evidence, that assumed error was harmless in this case. To be contrasted, although not applicable here, is the instance where an instruction contains erroneous statement of law. See *State v. Wanrow,* 88 Wn.2d 221, 237, 559 P.2d 548 (1977).

It is interesting to note that defendant's brief contends that it is a per se automatic reversible error to fail to give

an evidence of character instruction. He does not claim that it prevented him from arguing his theory nor does he argue that within reasonable probabilities the omission materially affected the outcome. Defendant's position elevates his contention to an error of such constitutional significance that it can never be harmless error. That is not the law.

The record must be evaluated in terms of reasonable probabilities and whether the outcome was materially affected. Thus, the proper resolution depends upon the probability that the error materially affected the result, *i.e.*, a 2–component analysis. It is not a question of some possibility and not a question of a remote probability. Rather it must involve a reasonable probability. Connected to that must be a determination whether the omitted instruction materially affected the outcome. Again, it is not the fact that every event or omission in a trial might conceivably have some effect upon the verdict. Rather, the inquiry is whether it has a material effect.

The reviewing court cannot isolate evidence, but must "scrutinize the entire record" and determine whether the claimed error affected the result. *State v. Britton*, 27 Wn.2d 336, 341, 178 P.2d 341 (1947).

In evaluating the claimed error it is important to put the underlying testimony in context. Three witnesses testified that defendant had a good reputation for being "sexual[ly] moral," for "sexual uprighteousness" and for being a "sexually decent person." Their entire collective testimony represents 14 pages of 494 pages of the report of proceedings.

Defense counsel was not only invited by the court, when discussing the instruction, to argue the issue to the jury, defense counsel did so. Defense counsel specifically named the three witnesses who testified as to defendant's character and argued as follows:

> Theresa Dixon, Doug Ross, Valorie Lowe, just briefly, they told you what kind of man Doug Thomas is and they told you a little bit about his family. What I think is important here to note is that as they testified they all know his reputation in the community in which he

resides, to portray sexual morality, uprighteousness and decency, the kind of guy he is. And what did they have to say? That his reputation, in essence, is good or excellent and they have known him for collectively speaking over a decade and a half.

They are not going to get on the stand and lie under oath. And what I think is very instrumental here, and extremely important to note, is that they are parents and not only are they parents, they have young girls, young girls just like . . . [the victim].

Verbatim Report of Proceedings, at 78 (Nov. 6, 1984).

Defense counsel was not interrupted by the prosecutor nor limited in any manner from arguing his defense theory. That eliminates the necessary predicate that instructional error must prevent a fair argument of the party's theory to the jury.

Defendant's evidence of a character trait was admitted in careful compliance with ER 404(a)(1). The sole factual question of relevance here was whether the jury believed the victim who, with plausible reasoning, positively identified the defendant, or whether it believed the defendant, who denied everything. Character trait was forcefully argued to the jury. We cannot conclude that there was a reasonable *probability* that one more sentence in the instructions would have *materially* affected the outcome. To find that, one has to say that the jury would have then disbelieved the victim and believed the defendant because of the weight attached to a character trait testified to by three of defendant's close friends. The jury was instructed to consider *all* the evidence and that a reasonable doubt could exist after "fully, fairly and carefully considering *all* of the evidence". The jury did not find a reasonable doubt nor do we.

If there were any error in not giving any instruction about character evidence, we conclude, after reviewing the entire record, including defendant's lengthy jury argument, that there is not a reasonable probability that the outcome of the trial would have been materially affected. Thus, the

claimed error was not prejudicial and therefore the equivalent of harmless error.

We now turn to the matter of an appropriate instruction when defendant has properly introduced testimony of character or trait. ER 404, 405.

Evidence of character or of a character trait is different from most evidence. It does not prove or disprove an element of a charged crime nor prove or disprove a particular defense. Its relevance is to permit, but not require, the jury to infer from the particular character trait that it is unlikely or improbable that the defendant committed the charged act. 1A J. Wigmore, *Evidence* §§ 54.1–56 (rev. ed. 1983). Because such evidence does not usually bear directly upon the disputed facts, it is desirable to instruct the jury as to its purpose and effect.

The central question is the appropriateness of the words that character evidence "may in and of itself create a doubt as to the guilt of the defendant."

Preliminarily, it is well to caution use of federal cases such as those cited by the defendant, *Michelson v. United States,* 335 U.S. 469, 476, 93 L. Ed. 168, 69 S. Ct. 213 (1948) and *Edgington v. United States,* 164 U.S. 361, 366, 41 L. Ed. 467, 17 S. Ct. 72 (1896). The first reason for such caution is the distinction between the right of a federal court to comment on the facts and the constitutional prohibition in this state. The second reason is the division among the federal circuit courts. Only three circuits follow the principle that the defendant is entitled to an instruction that character evidence in and of itself may create a reasonable doubt. At least seven circuits do not follow that rule and require at least that character evidence simply be considered along with all the other evidence. *See* 75 Am. Jur. 2d *Trial* § 802 (1974).

Defendant places great reliance on *State v. Allen,* 89 Wn.2d 651, 574 P.2d 1182 (1978) and *State v. Mark,* 94 Wn.2d 520, 618 P.2d 73 (1980). Both demonstrate the disarray in this area, but neither answers the question.

The muddle in our cases is easily illustrated. In *State v. Humphreys,* 118 Wash. 472, 478, 203 P. 965 (1922), the trial court refused an instruction that evidence of good character may of itself be sufficient to raise a reasonable doubt. The court said: "Whatever may be the rule in other jurisdictions, this state has answered the argument to the contrary in the case of *State v. Cushing,* 17 Wash. 544, 50 Pac. 512 [1897]". Yet, in *State v. Tyree,* 143 Wash. 313, 317, 255 P. 382 (1927), the court said that such evidence may itself create a doubt.

Then in *State v. Allen, supra* at 655, we stated that we have recognized that "such evidence may, in a given case, create a doubt in and of itself as to the guilt of the accused."

The proposed instruction in *State v. Allen, supra,* included the phrase that such evidence may in and of itself create a doubt as to guilt. We said that the proposed instruction did not incorrectly state the law. To confound the matter, *State v. Mark, supra* at 526, stated that *Allen* "does not go so far as to say that the refusal of such an instruction [the in and of itself portion] is reversible error, where the jury is otherwise instructed that it should consider the evidence as bearing on the guilt or innocence of the defendant." We then hedged by commenting: "And we indicated that the proposed instruction was vulnerable, at least to some extent, to an objection that it might mislead the jury." *Mark,* at 526.

Nothing is to be gained by trying to harmonize all of these cases. What should be the appropriate instruction? It is not desirable to include the direction to the jury that character or reputation evidence in and of itself may create a doubt. That places undue emphasis upon one item of testimony, emphasis which is not warranted. It isolates and singles out one bit of testimony. We need not decide here whether it is a comment on the evidence; however, *Mark* recognizes that the phrase may mislead the jury.

Because such evidence does not usually bear directly upon the issues, it is desirable to instruct the jury as to its

purpose and effect. The following instruction, taken from WPIC 6.12 (Supp. 1986) but omitting the "in and of itself" phrase, should suffice:

> Any evidence which bears upon good character and good reputation of the defendant should be considered by you, along with all other evidence, in determining whether or not the defendant is guilty. However, even if you find that the defendant is a person of good character or reputation, you should not acquit if you are convinced beyond a reasonable doubt of the defendant's guilt.

This instruction, when requested and when justified by the evidence, should be given. Whether its omission, when requested and justified, is reversible error will still depend upon application of a harmless error review. The potential issue can be avoided by giving it in an appropriate case.

Affirmed.

PEARSON, C.J., and UTTER, DOLLIVER, ANDERSEN, CALLOW, and DURHAM, JJ., concur.

DORE, J. (dissenting)—I dissent. The majority holds that the trial court properly refused to instruct the jury on the issue of the defendant's character and, even if there was error, the error was harmless. The record, unquestionably, shows that the defendant was entitled to a good character instruction and that the trial court erred in refusing to give any instruction on the issue. Given the circumstantial nature of the State's case and the significant role character evidence played in the defendant's theory of the case, the failure to instruct on the use of good character evidence was prejudicial error. I would reverse.

### GOOD CHARACTER INSTRUCTION

A defendant is allowed to prove good character on the premise that it is improbable that a person with certain "good" character traits would commit a crime inconsistent with those traits. *See* ER 404(a)(1), ER 405(a); 1A J. Wigmore, *Evidence* § 56, at 1161 (rev. ed. 1983). The purpose of a good character instruction is to explain to the jury the

rules applicable to character evidence, the purpose for which it may be considered, and the legal effect which it may be given. 13 R. Ferguson, Wash. Prac., *Criminal Practice and Procedure* § 3911, at 389 (1984).

The majority states that our cases addressing the proper wording of a good character instruction are in disarray. Our cases are not in the state of confusion suggested by the majority and are easily harmonized.

Since the earliest days of statehood, this court has followed the rule that a criminal defendant is entitled, if requested, to a specific instruction on the use of character evidence when the defendant introduces evidence of good character. *State v. Allen,* 89 Wn.2d 651, 654, 574 P.2d 1182 (1978); *State v. Cushing,* 14 Wash. 527, 533, 45 P. 145 (1896); *see* 23A C.J.S. *Criminal Law* § 1208 (1961). This court's Committee on Jury Instructions recommends that a good character instruction be given in "every case" where evidence of the defendant's character has been admitted on the issue of guilt. Comment, WPIC 6.12 (Supp. 1986). Our cases, however, have quibbled over the precise wording of a good character instruction.

In *Allen,* this court approved the following instruction:

> Evidence has been presented in this case which bears upon the good character and good reputation of the defendant. Such evidence is pertinent and proper in a criminal proceeding, *and may in and of itself create a doubt as to the guilt of the defendant.* Certainly such evidence should be considered by you, along with all the other evidence, in determining the guilt or innocence of the defendant.

(Italics mine.) *Allen,* at 653. In *State v. Mark,* 94 Wn.2d 520, 618 P.2d 73 (1980), the defendant requested a good character instruction nearly identical to the one approved in *Allen.* The trial court, declining to honor this request, gave an alternative instruction which deleted the language that good character may "in and of itself" create a doubt as to the guilt of the defendant. This court held that although such instructional language is a correct statement of the

law, it is not error to omit the "in and of itself" phrase where the jury is otherwise instructed on the issue of good character. *Mark,* at 525–26; *accord, State v. Humphreys,* 118 Wash. 472, 477–78, 203 P. 965 (1922). Read together, our cases stand for the proposition that a good character instruction *must be given,* if requested, in every case where the defendant has introduced evidence of his good character on the issue of guilt, but inclusion of the "in and of itself" phrase is left to the discretion of the trial court.

The defendant requested the following instruction on the use of the good character evidence:

> Evidence of the defendant's good character may be sufficient to raise a reasonable doubt whether the defendant is guilty, where doubt would otherwise not exist.

Clerk's Papers, at 19. Although this instruction was a correct statement of the law at the time of trial (*see Mark,* at 525–26; *Allen,* at 658), the majority holds the instruction was properly refused because it implies that good character evidence may "in and of itself" generate reasonable doubt. In so holding, the majority overrules *Mark* and *Allen.*

In any event, the majority's focus on the appropriateness of an instruction that suggests that character evidence may "in and of itself" create a doubt as to the guilt of the defendant turns a blind eye to the record. At the jury instruction conference, defense counsel agreed to delete the language the majority now finds offensive. Defense counsel then requested that the jury be instructed that evidence of the defendant's good character be taken into consideration, along with all other evidence, in determining guilt.[1] A careful review of the record shows that the trial court rejected

---

[1]CrR 6.15 evidences a preference for written instructions. *See* CrR 8.7; CR 51(f). I do not believe that the defendant should be penalized for not submitting the proposed modification in writing. The record indicates that the trial judge understood the substance of the request as well as the proposed language, thereby enabling the judge to correct the error before the jury was instructed. *See Seattle v. Rainwater,* 86 Wn.2d 567, 571, 546 P.2d 450 (1976).

this instruction under the mistaken belief that no good character instruction was necessary.

This proposed modification is, in substance, identical to the instruction adopted today by the majority. Curiously, the majority fails to discuss whether the failure to give this instruction was error.

I am also unable to agree with the implication in the majority opinion that the trial court's error is cured by the remaining instructions read and viewed as a whole. *See State v. Elder*, 70 Wn.2d 414, 419, 423 P.2d 533 (1967). The instructions that the jury consider "all of the evidence" do not cover the substance of the requested instruction. Missing from the court's instructions is an explanation of character evidence, its purpose and the legal effect it can be given.

Here, the defendant introduced evidence of his good character on the issue of guilt. His proposed instruction that evidence of good character may "in and of itself" raise a reasonable doubt correctly expressed the law at the time of trial. The defendant also had the foresight to propose an instruction that is, in substance, identical to the instruction adopted by the majority. In the face of clear and unmistakable authority, the trial court refused both instructions, and refused to give any instruction on the issue of good character. This was error.

## HARMLESS ERROR

The majority concedes that the defendant's theory of the case was that since he had a good reputation for sexual decency, it would be unlikely that he would commit the crime charged. A refusal to give a requested instruction constitutes reversible error where the absence of the instruction prevents the complaining party from fully and sensibly arguing his theory of the case to the jury. *See State v. Jones*, 95 Wn.2d 616, 623, 628 P.2d 472 (1981);

*State v. Walker,* 82 Wn.2d 851, 855–56, 514 P.2d 919 (1973).

The majority does not find reversible error because defense counsel was permitted to mention the testimony of the witnesses during closing argument. While defense counsel mentioned the good character testimony in closing argument, the jury was left without any guidance as to what part the defendant's good character could play in their verdict. The jury was not informed that the defendant was allowed to present evidence of his good character to raise the inference that it is improbable that a person of good character would have committed the offense charged; that good character is a *substantive* fact capable of generating a reasonable doubt; and that such evidence is to be considered, along with the rest of the evidence, in determining whether the defendant is guilty or not guilty of the charge. In the absence of a good character instruction, it is highly probable that the jury "discount[ed] or ignore[d] character evidence, not perceiving its relevance to the issue of guilt." *Allen,* at 655.

Furthermore, the court instructed the jury that it must "accept the law from the court" and advised that the "attorneys may properly discuss any specific instructions they think are particularly significant." Clerk's Papers, at 5. Later the court charged the jury:

> Counsel['s] remarks, statements and arguments are intended to help you understand the evidence and apply the law. They are not evidence, however, *and you should disregard any remark, statement or argument which is not supported by the evidence or the law given to you by the court.*

(Italics mine.) Clerk's Papers, at 6. The jury was told in no uncertain terms that it was not to consider matters not sanctioned by the court. Because defense counsel was denied the opportunity to tie the good character evidence to any law in the case, the only reasonable conclusion the

jury could reach was that good character was not a fact to be considered.

The majority next makes the absurd argument that error was harmless because the character evidence represents 14 pages of testimony and because one more sentence in the instructions would not have affected the outcome of the trial. Majority, at 863–64. These statements provide clear evidence that the majority does not understand either the purpose of good character evidence or the role such evidence plays in a criminal case.

Finally, the majority states that it reviewed the record and then makes the conclusory statement that there is no reasonable probability that the outcome of the trial would have been materially affected by the omitted instruction. The record does not support the majority's conclusion.

The proof at defendant's trial was totally circumstantial. The defendant denied that he raped the victim. Some evidence tended to show that another man in the house may have committed the assault. The medical testimony did not conclusively establish the time of the alleged rape and certain expert testimony was inconsistent with the victim's recollection of the assault. Identification was also in doubt as the victim did not see her assailant and there was no physical evidence linking the defendant to the crime.

The trial turned entirely on the credibility of the victim and the defendant. The defendant's good character was directly tied to the believability of his claim that he did not commit the crime and his character was the only defense he could present to the jury. *See State v. Hosey*, 54 Wash. 309, 103 P. 12 (1909).

Character evidence is highly relevant where, as here, the defendant denies having committed the crime and the State's case is based on circumstantial evidence. Given these circumstances, I can only conclude that there is a reasonable probability that the outcome of the trial was affected by the trial court's failure to properly instruct the jury on the use of the good character evidence.

CONCLUSION

The trial court's failure to instruct on the use of character evidence was prejudicial error. I would reverse the trial court and the Court of Appeals and remand for a new trial.

GOODLOE, J., concurs with DORE, J.