ON MOTION FOR REHEARING AND CERTIFICATION
 

 LEWIS, J.
 

 We deny Appellant’s Motion for Rehearing and Certification. On our own motion, we withdraw our previous opinion and substitute the following in its place.
 

 Ronald Wayne Hendricks, Appellant, appeals his convictions for one count of battery and two counts of sexual battery on a child less than twelve years of age by a person eighteen years of age or older. Appellant raises five issues, three of which merit discussion. First, Appellant argues that the trial court abused its discretion in excluding evidence of his reputation for sexual morality. Second, he argues that the trial court committed per se reversible error by failing to invite objections from defense counsel after announcing its anticipated response to the jury’s request to view a portion of the trial transcript. Finally, and relatedly, Appellant argues that the trial court fundamentally erred in denying the jury’s request to view a portion of the transcript without advising the jury that it could request a “read-back.” For the reasons explained below, we find no
 
 *821
 
 reversible error. Accordingly, we affirm Appellant’s convictions and write to explain our reasoning as to the three issues that merit discussion.
 

 I. FACTS
 

 The State charged Appellant with four counts of sexual battery on a child less than twelve years of age. The victim was the daughter of Appellant’s former girlfriend, in whose home he had lived for several years as part of the family. The State’s evidence consisted of the victim’s testimony and a recording of an incriminating telephone conversation between Appellant and the victim, who was an adult by the time of trial. In his own defense, Appellant testified that he did not commit the charged offenses. He also introduced testimony from several witnesses who stated that he had a good reputation in the community for truth and veracity. Two of these witnesses, Appellant’s former wife and natural daughter, also would have testified that he had a reputation for sexual morality, but the trial court excluded this testimony based on the State’s motion in limine.
 

 Appellant’s adult daughter testified that she knew “many, many, many people” who knew Appellant and that, when she was a child and Appellant was raising her, she had friends come to the home for sleepovers. She further testified that she knew Appellant’s reputation in the community for truth and veracity and that she “[didn’t] think it could be better.” Similarly, Appellant’s former wife testified that she knew “hundreds and hundreds” of people who knew Appellant, that Appellant had “outstanding morals and character,” and that he was “highly, highly respected.” Outside the jury’s presence, Appellant’s counsel advised the court that, if given the opportunity, both of these witnesses would testify that they knew Appellant’s reputation in the community for being sexually moral and that it was “excellent.” The trial court stood by its earlier ruling that this evidence was inadmissible.
 

 After the jury retired to deliberate, it submitted the following written request to the trial court: “May we see the transcript of the testimony of [the victim] regarding the third charge related to the allegation about [Appellant’s] placing his penis on [the victim] and ejaculating[?]” In testifying about this offense, the victim stated that this memory bothered her, that it was “probably ... the hardest for [her] to talk about,” that it disturbed her, and that it was “horribly vivid in [her] head.” The incident occurred on the bed Appellant shared with the victim’s mother, and the victim recalled that Appellant first attempted to “force ... his penis into [her] vagina” and that “it wasn’t working because [she] was so small.” She explained that he then “started rubbing ... his penis against [her] vagina until ... he ejaculated on [her].”
 

 The court considered the jury’s request to view this portion of the transcript outside the jury’s presence, stating, “I think the answer is no, rely on your memory.” There was no response to this statement from the attorneys, although the record shows that counsel for Appellant was present. After the court announced its anticipated response and received no objections, the jury was brought into the courtroom. To the jury, the trial court stated, “Ladies and gentlemen, I have your question about the transcript, and the short answer is, no. You have to rely on your recollection and reach your decision based on that. Thank you.” The jury then went back to the deliberation room. Later, it found Appellant guilty as charged of counts one and two, guilty of battery as a lesser-included offense of count three, and not guilty of
 
 *822
 
 count four. After the trial court sentenced Appellant, this appeal followed.
 

 II. ANALYSIS
 

 A. Exclusion of Evidence of Appellant’s Reputation for Sexual Morality
 

 On appeal, Appellant argues that the exclusion of the evidence of his reputation for sexual morality was error because it was admissible under section 90.404(l)(a) and 90.405, Florida Statutes (2008). The State agrees that sections 90.404(l)(a) might support Appellant’s theory of admissibility, but it contends that section 90.405 presents an “insurmountable bar” to the admission of evidence that a person does not have the character trait necessary to commit acts of child molestation, as this trait is not susceptible to proof by reputation evidence. We agree with the State.
 

 A trial court’s decision to admit or exclude evidence is typically reviewed for abuse of discretion.
 
 McCray v. State,
 
 919 So.2d 647, 649 (Fla. 1st DCA 2006). However, a trial court’s discretion over such decisions is limited by the evidence code and the applicable case law, and its interpretation of those authorities is subject to de novo review.
 
 Id.
 

 As a general rule, all relevant evidence is admissible unless it is specifically excluded by a rule of evidence.
 
 Bryan v. State,
 
 533 So.2d 744, 746 (Fla.1988). Section 90.404(l)(a), Florida Statutes (2008), provides that “[ejvidence of a person’s character or a trait of character is inadmissible to prove action in conformity with it on a particular occasion, except ... [ejvi-dence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the trait.” Under this rule, an accused is permitted to introduce evidence of any character trait pertinent to the charges against him despite the general proscription against character evidence.
 
 See id.
 

 Section 90.405, Florida Statutes (2008), dictates the methods of proving character at trial. Under section 90.405(1), any time a person’s character is admissible, it may be proven by evidence of that person’s reputation. However, proof of a person’s character may not be made by specific instances of conduct unless that person’s character is “an essential element of a charge, claim, or defense.” § 90.405(2). A defendant may not offer proof of his character by admitting evidence of an individual’s opinion.
 
 See
 
 § 90.405 (listing the proper methods of proving character and omitting opinion testimony from the list); Charles W. Ehrhardt,
 
 Florida Evidence
 
 § 404.5, at 201 (2009 ed.). In contrast, reputation evidence may be admitted because “[wjhen many people in the community discuss and compare an issue, it is felt that the resulting community opinion is trustworthy.” Ehrhardt, § 405.1, at 283.
 

 No Florida case has yet held that a person accused of child molestation may or may not introduce evidence of his reputation for sexual morality for the purpose of showing he does not have the character trait necessary for committing acts of child molestation. However, the Fifth District addressed this issue in dicta in
 
 Alvelo v. State,
 
 769 So.2d 476, 477 (Fla. 5th DCA 2000). There, the defendant, who was accused of committing lewd acts upon a child, attempted to call “a string of witnesses to testify that [he] had never abused them or anyone they knew.”
 
 Id.
 
 at 477. Although the defendant in
 
 Alvelo
 
 apparently characterized this evidence as reputation evidence, it was clearly inadmissible as evidence of specific acts of conduct (or lack thereof).
 
 See Ehrhardt,
 
 § 404.5, at 201-02 n. 7. Regardless, in addressing this issue, the Fifth District observed that, “[ujnlike one’s reputation for honesty or
 
 *823
 
 peacefulness, traits that might be noticed by the community, whether one secretly molests children or does not would not be openly exhibited to the community.”
 
 Alvelo,
 
 769 So.2d at 477. We agree with this statement, which was also embraced by the Third District in dicta in
 
 Russ v. State,
 
 934 So.2d 527, 532 (Fla. 3d DCA 2006).
 

 At issue in
 
 Russ
 
 was whether the trial court properly excluded evidence that the defendant had a reputation for non-violence and respect toward females, where he had been charged with lewd or lascivious exhibition and sexual battery on a person under the age of twelve. 934 So.2d at 531-32. Noting that “[i]t was not argued that Russ had acted violently,” the Third District found no abuse of discretion in the exclusion of such evidence.
 
 Id.
 
 at 532. The court went on to quote, with approval, the Fifth District’s observation in
 
 Alvelo
 
 that “whether one secretly molests children or does not would not be openly exhibited to the community.”
 
 Id.
 
 (quoting
 
 Alvelo,
 
 769 So.2d at 477).
 

 To date,
 
 Alvelo
 
 and
 
 Russ
 
 are the only Florida cases to have addressed, either in dicta or a holding, the issue of whether a defendant should be allowed to introduce evidence of his reputation for sexual morality to rebut a charge of a sexual offense against a child. However, several out-of-state cases have mentioned this issue, and the majority of those cases, in contradiction of
 
 Alvelo
 
 and
 
 Russ,
 
 indicate that evidence of the defendant’s sexual morality or “normalcy” is admissible when the defendant offers it to show that he does not have the character trait necessary to commit acts of child molestation.
 
 See, e.g., State v. Rhodes,
 
 219 Ariz. 476, 200 P.3d 973, 976-77 (2008) (holding that evidence that a defendant had a reputation for sexual normalcy and appropriate behavior around children should have been admitted);
 
 U.S. v. John,
 
 309 F.3d 298, 303 (5th Cir.2002) (noting that personal opinion and reputation testimony regarding sexual morality are admissible to show that defendant was not capable of engaging in sexual conduct with a child, where the issue was whether the trial court erred in failing to instruct the jury that such evidence could give rise to a reasonable doubt);
 
 Wheeler v. State,
 
 67 S.W.3d 879, 882-83 (Tex.Crim.App.2002) (noting that the defendant “was entitled to proffer evidence of his good character (or propensity) for moral and safe relations with small children or young girls,” where the issue concerned the propriety of the State’s introducing specific acts of misconduct as rebuttal evidence);
 
 People v. McAlpin,
 
 53 Cal.3d 1289, 283 Cal.Rptr. 382, 812 P.2d 563, 576-78 (1991) (holding that the trial court should have admitted evidence of the defendant’s reputation for “normalcy in his sexual tastes” but that its failure to do so was harmless);
 
 State v. Miller,
 
 709 P.2d 350, 353-54 (Utah 1985) (indicating that evidence of the defendant’s reputation for sexual morality would have been admissible had it been offered but that evidence of specific acts was not). Notably, these out-of-state cases do not squarely address the distinction recognized by our sister court in
 
 Alvelo v. State,
 
 769 So.2d 476, 477 (Fla. 5th DCA 2000), between traditionally admissible reputation evidence and evidence of a person’s reputation for sexual morality as it relates to a charge of a sexual offense against a child.
 
 See generally, e.g., State v. Rhodes,
 
 219 Ariz. 476, 200 P.3d 973 (2008);
 
 U.S. v. John,
 
 309 F.3d 298 (5th Cir.2002);
 
 Wheeler v. State,
 
 67 S.W.3d 879 (Tex.Crim.App.2002);
 
 People v. McAlpin,
 
 53 Cal.3d 1289, 283 Cal.Rptr. 382, 812 P.2d 563 (1991);
 
 State v. Miller,
 
 709 P.2d 350 (Utah 1985). For example, although the Texas Court of Criminal Appeals in
 
 Wheeler v. State
 
 noted that “one might certainly have a reputation in the community concerning” the “conduct-oriented traits” of
 
 *824
 
 pedophilia and child sexual abuse and “the more general character trait for ‘safe and moral treatment of children,’ ” it did not acknowledge the unreliability of such a reputation due to the tendency of acts of child molestation to occur in secret, as the court in
 
 Alvelo
 
 did.
 
 See
 
 67 S.W.3d at 883 n. 4.
 

 In contrast, this key distinction was acknowledged in
 
 State v. Jackson,
 
 46 Wash.App. 360, 730 P.2d 1361, 1364 (1986). In
 
 Jackson,
 
 the court held that a defendant’s reputation for “sexual morality and decency” was not admissible in a trial concerning a sexual offense against a child. The
 
 Jackson
 
 court provided the following reasoning:
 

 The crimes of indecent liberties and incest concern sexual activity, which is normally an intimate, private affair not known to the community. One’s reputation for sexual activity, or lack thereof, may have no correlation to one’s actual sexual conduct. Simply put, one’s reputation for moral decency is not pertinent to whether one has committed indecent liberties or incest. The trial court properly refused to permit Jackson’s witnesses to testify concerning his reputation for sexual morality and decency.
 

 730 P.2d at 1364. In dicta, the
 
 Jackson
 
 court also “doubt[ed] the validity” of the assertion that “sexual morality and decency is the specific trait pertinent to the charge of indecent liberties.”
 
 See id.
 
 However, the crux of its decision was the inherent unreliability of reputation evidence of that trait.
 
 See id.
 
 (concluding, that, “[s]imply put, one’s
 
 reputation
 
 for moral decency is not pertinent to whether one has committed indecent liberties or incest”) (emphasis added). Under the
 
 Jackson
 
 court’s reasoning, even if the
 
 trait
 
 of “sexual morality or decency” is itself pertinent to a charge of a sexual offense against a child, a person’s
 
 reputation
 
 concerning that trait is not pertinent, due to the nature of the crime as one that occurs in secret.
 
 See id.
 
 The
 
 Jackson
 
 decision was reaffirmed in
 
 State v. Spencer,
 
 where the court provided the following analysis:
 

 [T]he
 
 [Jackson
 
 ] court was concerned with the reliability of such reputations given that sexual conduct of the nature alleged here normally does not occur in public. Implicit in the court’s analysis is the conclusion that reputations for truthfulness, peacefulness, etc., are more reliable and less likely to differ from reality because those traits are commonly displayed in public. Reputations concerning sexual conduct, however, are more likely to be based on speculation than on observed conduct. In addition, it is highly unlikely that a person will discuss his or her immoral or indecent sexual conduct; therefore, a person’s reputation for sexual conduct is not likely to reflect immoral or indecent conduct.
 

 84 Wash.App. 1010 (Wash.Ct.App.1996) (unreported), No. 35276-8-I, 1996 WL 665931, at *4 (Wash.Ct.App. Nov. 18, 1996). We agree with the reasoning in
 
 Jackson
 
 and
 
 Spencer,
 
 which is based on the same concerns expressed in
 
 Alvelo,
 
 769 So.2d at 477, regarding the susceptibility of the particular character trait at issue to proof by reputation evidence.
 

 Notably, the
 
 Jackson
 
 court made its decision after considering rules of evidence similar to those of Florida.
 
 See
 
 730 P.2d at 1363-64 (quoting Washington’s eviden-tiary rule 404(a) and acknowledging that an individual’s opinion is not admissible to prove character);
 
 compare
 
 Wash. R. Evid. 404(a) (“Evidence of a person’s character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except ... [e]vidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same.”)
 
 with
 
 
 *825
 
 § 90.404(1), Fla. Stat. (2008) (“Evidence of a person’s character or a trait of character is inadmissible to prove action in conformity with it on a particular occasion, except ... [e]vidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the trait.”);
 
 compare
 
 Wash. R. Evid. 405 (providing that when character evidence is admissible, “proof may be made by testimony as to reputation,” that inquiry into relevant specific instances of conduct is allowable on cross-examination, and that proof of character may be made evidence of specific instances of conduct when “character or a trait of character is an essential element of a charge, claim, or defense”)
 
 with
 
 § 90.405, Fla. Stat. (2008) (providing that “[w]hen evidence of the character of a person or of a trait of that person’s character is admissible, proof may be made by testimony about that person’s reputation” and that “[w]hen character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may be made of specific instances of that person’s conduct”).
 
 [1]
 
 Additionally, the reasoning of
 
 Jackson
 
 and
 
 Spencer
 
 is particularly important for the purposes of the instant case because in Florida the reliability of reputation testimony is an issue of admissibility.
 
 See Larzelere v. State,
 
 676 So.2d 394, 399 (Fla.1996) (explaining that “the community from which the reputation testimony is drawn [must be] sufficiently broad to provide the witness with adequate knowledge to give a reliable assessment”);
 
 accord Ehrhardt,
 
 § 405.1, at 283 (explaining that “[w]hen many people in the community discuss and compare an issue, it is felt that the resulting community opinion is trustworthy”).
 

 In short, we agree with the point in
 
 Alvelo, Russ, Jackson,
 
 and
 
 Spencer
 
 that because a person’s tendency, or lack thereof, to commit acts of child molestation is not something that a community tends to have knowledge of, testimony concerning a person’s reputation for having such a trait is inherently unreliable and distinguishable from traditionally admissible reputation
 
 *826
 
 evidence. For this reason, we’ find no abuse of discretion in the exclusion of such evidence in the instant case. To the extent Appellant attempted to introduce evidence only of his reputation for having appropriate sexual relationships with adults, it was within the trial court’s discretion to exclude it as either irrelevant or substantially more likely to confuse the issues than to offer probative value:
 
 Cf. Russ v. State,
 
 934 So.2d 527, 532 (Fla. 3d DCA 2006) (holding that the defendant’s reputation “for respectfulness toward women” had no bearing on whether he committed lewd or lascivious exhibition or sexual battery on a child);
 
 see
 
 § 90.403, Fla. Stat. (2008) (providing that “[r]elevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence”).
 

 B. The Jury’s Request to View a Portion of the Trial Transcript During Deliberations
 

 Having found no error in the trial court’s exclusion of the evidence of Appellant’s reputation for sexual morality, we turn to his arguments, raised for the first time on appeal, concerning the trial court’s handling of the jury’s request to view a portion of the trial transcript. First, Appellant argues that the trial court committed per se reversible error by failing to afford him an opportunity to participate in a discussion of the action to be taken in response to the jury’s request. Second, Appellant argues that the trial court’s instruction was reversible error because it suggested that a read-back of trial testimony was impermissible as a matter of law, as opposed to discretionary. Both of these arguments relate to Florida Rule of Criminal Procedure 3.410, which provides as follows: After the jurors have retired to consider their verdict, if they request additional instructions or to have any testimony read to them they shall be conducted into the courtroom by the officer who has them in charge and the court may give them the additional instructions or may order the testimony read to them. The instructions shall be given and the testimony read only after notice to the prosecuting attorney and to counsel for the defendant.
 

 (i) Notice under Rule 3.410
 

 Appellant’s argument that the trial court’s failure to request objections to its proposed instruction violated the notice requirements of Rule 3.410, thus constituting per se reversible error, is based on
 
 Ivory v. State,
 
 351 So.2d 26 (Fla.1977), and
 
 Bradley v. State,
 
 513 So.2d 112, 112-13 (Fla.1987). In
 
 Ivory,
 
 during deliberations, the jury sent notes to the trial court requesting the jury instructions and evidentiary documents. 351 So.2d at 27. The trial court provided those documents to the jury “[w]ithout notifying the defendant, his counsel, or counsel for the state, and outside of their presence.”
 
 Id.
 
 The supreme court determined that this error required a new trial, explaining its holding as follows:
 

 Any communication with the jury outside the presence of the prosecutor, the defendant, and defendant’s counsel is so fraught with potential prejudice that it cannot be considered harmless.... We now hold that it is prejudicial error for a trial judge to respond to a request from the jury without the prosecuting attorney, the defendant, and defendant’s counsel being present and having the opportunity to participate in the discussion of the action to be taken on the jury’s request. This right to participate includes the right to place objections on record as well as the right to make full
 
 *827
 
 argument as to the reasons the jury’s request should or should not be honored.
 

 Id.
 
 at 28.
 

 In
 
 Bradley v. State,
 
 513 So.2d 112 (Fla.1987), the supreme court was confronted with a record showing a violation of Rule 3.410 similar to the one at issue in
 
 Ivory.
 
 The trial court in
 
 Bradley
 
 responded in writing to the jury’s request during deliberations to read a police report. 513 So.2d at 112. The record in
 
 Bradley
 
 did not reflect whether the trial court gave notice to the prosecutor and defense counsel before sending the note back to the jury.
 
 Id.
 
 For this reason, the
 
 Bradley
 
 court held that reversal was required.
 
 Id.
 
 at 112-13. Notably, at oral argument, the appellant’s counsel admitted that defense counsel was present during the trial court’s consideration of the jury’s inquiry.
 
 Id.
 
 at 114. Based on this concession, the State requested that the court remand the case for a reconstruction of the record to determine who was present.
 
 Id.
 
 The supreme court rejected this request and the argument “that
 
 'presence
 
 of counsel is all that is required under rule 3.410.”
 
 Id.
 
 The court then made the following observations:
 

 The right to participate, set forth in
 
 Ivory,
 
 includes the right to place objections on the record as well as the right to make full argument as to why the jury request should or should not be honored.... ‘Notice is not dispositive. The failure to respond in open court is alone sufficient to find error.’
 

 Bradley,
 
 513 So.2d at 114 (citations omitted).
 

 In
 
 Thomas v. State,
 
 730 So.2d 667, 668-69 (Fla.1998), the supreme court clarified its position regarding the requirements of Rule 3.410. There, the bailiff had informed the trial court that the jury had a question concerning a notation on one of the State’s exhibits.
 
 Id.
 
 at 667. The trial court instructed the bailiff “that they should consider [the notation] as part of the evidence and continue to deliberate on their verdict.”
 
 Id.
 
 The trial court advised the prosecutor and defense counsel of this communication after it occurred but before the jury returned a verdict and asked whether they had any objections to the process the court used to communicate with the jury.
 
 Id.
 
 at 667-68. Both attorneys stated that they had no objection.
 
 Id.
 
 at 668. On appeal, citing
 
 Ivory
 
 and its progeny, the defendant argued that the trial court’s communication with the jury constituted per se reversible error.
 
 Id.
 
 The supreme court declined to find reversible error, however, due to defense counsel’s affirmative waiver of the issue.
 
 Id.
 
 at 668-69. The
 
 Thomas
 
 court noted that “[t]he
 
 per se
 
 reversible error rule announced in
 
 Ivory
 
 is prophylactic in nature and must be invoked by contemporaneous objection at trial.”
 
 Id.
 
 at 668. The
 
 Thomas
 
 court also emphasized that the “particular evil rule 3.410 and the
 
 per se
 
 error standard of
 
 Ivory
 
 were designed to prevent is the lack of notice to counsel,
 
 coupled with the lost opportunity for counsel to argue and to place objections on the record”
 
 and that “an opportunity to contribute after the instruction has been given is insufficient.” 730 So.2d at 668 (quoting
 
 Mills v. State,
 
 620 So.2d 1006, 1008 (Fla.1993) (internal citations omitted)).
 

 Based on the
 
 Thomas
 
 court’s clarification that counsel must lodge a contemporaneous objection when given the opportunity to do so, this Court, in
 
 Paige v. State,
 
 802 So.2d 1161, 1164 (Fla. 1st DCA 2001), affirmed the defendant’s convictions, despite the trial court’s failure to invite defense counsel to comment on the jury’s request for re-instruction. The
 
 Paige
 
 Court explained that affirmance was proper “[b]ecause defense counsel and defendant were present in the courtroom at the time of the asserted error and did not
 
 *828
 
 make a contemporaneous objection at trial.”
 
 Paige,
 
 802 So.2d at 1164.
 

 Here, Appellant requests that we reverse his convictions and require a new trial because the trial court did not expressly invite his attorney to object to its anticipated answer to the jury’s question. We decline to do so because Appellant received both notice and an opportunity to be heard, as required under Rule 3.410 and the case law interpreting it. In stating, “I think the answer is no, rely on your memory,” the trial court gave Appellant’s attorney the opportunity to argue for a different answer. Like the defense counsel in
 
 Paige,
 
 Appellant’s attorney simply chose not to object.
 
 See
 
 802 So.2d at 1164. The jury was not in the courtroom yet, and nothing in the record indicates that the trial court cut off Appellant’s right to respond. We have no reason to believe that the trial court would not have listened to a full argument if defense counsel had attempted to make one. Therefore, we do not agree with Appellant’s claim that the trial court denied him appropriate notice and an opportunity to be heard under Rule 3.410.
 

 (ii) Availability of a “Read-back” of Trial Testimony
 

 Finally, we consider Appellant’s argument that the trial court reversibly erred in instructing the jury that it had to rely on its memory. Appellant contends that the trial court should have instructed the jury that, at the trial court’s discretion, it could hear a read-back of portions of the testimony, even though he did not request such an instruction. He further argues that the error in the instant case cannot be considered harmless because if the jury had been permitted to review the testimony of the victim, it may have found him not guilty as to count III or determined that the victim lacked credibility as to all of her allegations. Thus, Appellant claims that the trial court was required not only to advise the jury of the rules governing read-backs but also to take the additional step of reading back the testimony.
 

 Although Appellant does not argue that the omission of the additional instruction or the denial of a read-back was fundamental error, such a conclusion is required for reversal because Appellant failed to object to the trial court’s instruction either when it was announced outside the jury’s presence, when it was read to the jury, or otherwise.
 
 See State v. Delva,
 
 575 So.2d 643, 644 (Fla.1991) (noting that an error in the trial court’s instructions to the jury is subject to the contemporaneous objection rule and may not be raised on appeal absent fundamental error). Despite Appellant’s failure to argue fundamental error, we consider whether the purported error is of a fundamental nature because it is an appellate court’s “unrenun-ciable judicial duty” to correct fundamental error even if it is not raised.
 
 See Bain v. State,
 
 730 So.2d 296, 302 (Fla. 2d DCA 1999) (called into doubt on other grounds in
 
 State v. Jefferson,
 
 758 So.2d 661, 664 (Fla.2000));
 
 see also I.A. v. H.H.,
 
 710 So.2d 162, 165 (Fla. 2d DCA 1998) (noting that it is an appellate court’s “duty to notice and correct ... fundamental errors even when they have not been identified by the parties”).
 

 Before proceeding to fundamental error analysis, we will review the general standards governing a trial court’s response to a jury’s request to either view a trial transcript or have testimony read back to it. There is no rule of criminal procedure providing that a jury may view a transcript of the proceedings.
 
 See
 
 Fla. R.Crim. P. 3.400(a) (omitting transcripts from the list of items a jury may view in the deliberation room). In contrast, Rule 3.410 provides that a trial court may, in its discretion, have portions of the trial testi
 
 *829
 
 mony read back to the jury upon request. Fla. R.Crim. P. 3.410. A trial court’s discretion over whether to allow a read-back of testimony is wide.
 
 Avila v. State,
 
 781 So.2d 413, 415 (Fla. 4th DCA 2001). In fact, the Florida Supreme Court has observed that “courts have found no abuse of discretion even where the trial judge has, without much consideration, entirely rejected the jury’s request for a read back.” Francis
 
 v. State,
 
 808 So.2d 110, 130 (Fla.2001) (citing
 
 McKee v. State,
 
 712 So.2d 837, 838 (Fla. 2d DCA 1998)).
 

 Despite the wide latitude a trial court is accorded in exercising its discretion to either read back testimony or not, a trial court “may not mislead the jury into thinking that a readback is prohibited.”
 
 Avila,
 
 781 So.2d at 415. The reasoning behind this rule is that juries should not be prospectively discouraged from requesting read-backs of other portions of the trial simply because the trial court has denied its request for a read-back of a particular portion.
 
 See Johnson v. State,
 
 10 So.3d 680, 681 (Fla. 3d DCA 2009). In
 
 Avila v. State,
 
 the Fourth District found the trial court’s instructions misleading where the jury requested a read-back and the trial court responded by stating that no transcripts were available and that the jury was required to rely on its own recollection. 781 So.2d at 415-16. The Third District cited
 
 Avila
 
 with approval in
 
 Johnson v. State,
 
 where it found error, albeit harmless, in the trial court’s pre-deliberation instruction that there was not a “simultaneous transcript” of the trial and that the jury would have to rely on its own recollection if it had any questions regarding the facts.
 
 Johnson,
 
 10 So.3d at 681.
 

 However, the Third District distinguished
 
 Avila
 
 in
 
 Hazuri v. State,
 
 23 So.3d 857 (Fla. 3d DCA 2009), where the trial court gave an instruction similar to the one at issue in the instant case. In
 
 Hazuri,,
 
 the jury sent a note to the court requesting trial transcripts. 23 So.3d at 857. The trial court informed the prosecutor and defense counsel that it believed “the accurate and correct response is that they must rely on their own collective recollection of the evidence.”
 
 Id.
 
 at 858. Defense counsel objected based on the failure of the suggested instruction to inform the jury of the availability of a read-back.
 
 Id.
 
 The trial court overruled the objection and instructed the jury as it had announced it would.
 
 Id.
 
 On appeal, the Third District held that the instruction was “fair and legally accurate” and that the trial court was under no obligation, in response to the request for transcripts, to inform the jury that a read-back may be available upon request.
 
 Id.
 
 at 858-59. The basis of the
 
 Hazuri
 
 court’s distinction of
 
 Avila
 
 was that in
 
 Avila,
 
 the jury had requested a read-back, while in
 
 Hazuri,
 
 it had requested to view the transcripts.
 
 Hazuri,
 
 23 So.3d at 859-60.
 

 The Fourth District repudiated this distinction in
 
 Barrow v. State,
 
 27 So.3d 211 (Fla. 4th DCA 2010). There, as in
 
 Hazuri,
 
 the jury requested to view the trial transcript.
 
 Barrow,
 
 27 So.3d at 215. Both the prosecutor and defense counsel suggested that the court advise the jury of its right to request a read-back.
 
 Id.
 
 at 215-16. The court, however, refused to give such an instruction, and instead told the jury, “There are no transcripts available for your review. Please rely on the evidence presented during the proceedings.”
 
 Id.
 
 at 216. The Fourth District held that this instruction was misleading and, thus, constituted reversible error.
 
 Id.
 
 at 217-18. Accordingly, the
 
 Barrow
 
 court certified conflict with
 
 Hazuri. Id.
 
 at 218.
 

 This Court has not yet considered in a written opinion whether it is error for a trial court to deny a jury’s request to view a portion of the trial transcript without informing the jury that a read-back of
 
 *830
 
 testimony may be permissible at the trial court’s discretion. However, we will leave that determination for another day. For the purposes of the instant case, we will assume arguendo that the instruction given was erroneous and proceed to a determination of whether any error in the instruction rose to the level of fundamental error.
 

 Error may be harmful and yet not fundamental.
 
 Reed v. State,
 
 837 So.2d 366, 370 (Fla.2002). Fundamental error is “error that ‘reaches down into the validity of the trial itself to the extent that a verdict of guilty ... could not have been obtained without the assistance of the alleged error.’ ”
 
 Brooks v. State,
 
 762 So.2d 879, 899 (Fla.2000) (quoting
 
 McDonald v. State,
 
 743 So.2d 501, 505 (Fla.1999)). Moreover, error is fundamental only if it “goes to the very heart of the judicial process” and “extinguishes a party’s right to a fair trial,” such that it results in a miscarriage of justice.
 
 Martinez v. State,
 
 933 So.2d 1155, 1159 (Fla. 3d DCA 2006).
 

 The Florida Supreme Court has cautioned that “[t]he doctrine of fundamental error should be applied only in rare cases where a jurisdictional error appears or where the interests of justice present a compelling demand for its application.”
 
 Smith v. State,
 
 521 So.2d 106, 108 (Fla.1988). As this Court has explained, one reason for appellate courts’ reluctance to find fundamental error is that “[w]e do not want to encourage the creation of ‘gotchas’ whereby the defense is allowed to sit on its rights [and] say nothing until after it sees whether the jury returns an adverse verdict.”
 
 Jones v. State,
 
 571 So.2d 1374, 1376 n. 3 (Fla. 1st DCA 1990);
 
 accord Sailor v. State,
 
 816 So.2d 182, 184 (Fla. 1st DCA 2002) (noting that the contemporaneous objection rule was designed to prevent the type of “gamesmanship” that occurs when “a party waits to see if the jury renders a favorable verdict while the party withholds a claim of error in the process”). For this reason, it has been established that an error of omission in jury instructions is fundamental only when “the omission is pertinent or material to what the jury must consider in order to convict.”
 
 State v. Delva,
 
 575 So.2d 643, 645 (Fla.1991).
 

 In recent cases considering whether a trial court may deny a request to view a portion of the trial transcript without simultaneously informing the jury of the rules governing read-backs, the district courts have either specifically noted that the issue was preserved or recited facts showing preservation.
 
 E.g., Barrow,
 
 27 So.3d at 215-16 (noting that the prosecutor suggested that the trial judge tell the jury it could request read-backs and that the defense attorney affirmatively requested such an instruction);
 
 Hazuri,
 
 23 So.3d at 858 (quoting trial counsel’s request for an instruction regarding the read-back option);
 
 Johnson,
 
 10 So.3d at 681 (noting that trial counsel preserved the issue by objecting to the instructions to the jury that no transcripts were available and that it had to “rely upon [its] own recollection of the evidence”);
 
 Avila,
 
 781 So.2d at 415 (finding the issue concerning the trial court’s failure to advise the jury of its right to request a read-back preserved by trial counsel’s request for a read-back after the jury asked to review a portion of the testimony);
 
 Roper v. State,
 
 608 So.2d 533, 533-34 (Fla. 5th DCA 1992) (noting defense counsel’s objection to the court’s response to the jury’s request to “see” testimony). Because the issue was preserved, the courts in those cases were not called upon to consider fundamental error.
 

 In contrast, in
 
 Farrow v. State,
 
 573 So.2d 161, 162-63 (Fla. 4th DCA 1990), the Fourth District considered whether it was fundamental error for the trial court to announce to the jury during voir dire, “[Y]ou’re going to have to listen very carefully to the testimony of the witnesses
 
 *831
 
 because you’re only going to hear it once. The court stenographer is not going to be reading back to you the testimony of the witnesses.” The
 
 Farrow
 
 court declined to find fundamental error, explaining that while the instruction was error, it did not “go to the merits of the case” and did not deprive the defendant of a fair trial. 573 So.2d at 163. The court noted that to find fundamental error would encourage gamesmanship.
 
 See id.
 
 Specifically, the court explained, “It would be far better for the defendant
 
 not
 
 to object, even though the error is easily curable, and await the outcome of the trial. If the defendant is convicted, then defense counsel can be assured of securing a reversal on appeal because of the ‘fundamental’ error which the judge committed in voir dire.”
 
 Id.
 
 The same risk is present in cases where the jury asks to view a specific portion of the transcript and defense counsel remains silent as the trial court denies the request and fails to explain the rules governing read-backs.
 

 Despite this risk, in
 
 LaMonte v. State,
 
 145 So.2d 889, 893 (Fla. 2d DCA 1962), the court found fundamental error when considering the related issue of whether the trial court erred in denying a jury’s affirmative request for a read-back even though defense counsel did not object to the ruling. In
 
 LaMonte,
 
 the State presented an entirely circumstantial case of robbery, and the only competent evidence that tied the defendant to the robbery was a mask that was found in his home. 145 So.2d at 891-92. The police officer who found the mask first testified that he found it “when he got a chair to look up into the attic and that when he did he noticed this mask on the floor.”
 
 Id.
 
 at 892. Later, he clarified his testimony, stating that he found the mask on the floor of a closet.
 
 Id.
 
 892-93. The jury found this testimony important to its decision, as it illustrated by asking during deliberations “whether the rubber mask was found on the floor of the closet or whether it was found in the attic.”
 
 Id.
 
 at 892. In posing this question, the jury suggested that the court either answer the question or have the testimony on this issue repeated.
 
 Id.
 
 The trial court denied the jury’s request, stating that it could not comment on the evidence or tell the jury what was in the record and that the jury had already heard the testimony.
 
 Id.
 
 Even though defense counsel did not make a contemporaneous objection, the appellate court reversed, holding that the trial court should have read back the testimony because “there was considerable doubt in the jury’s mind concerning the very testimony which they wished read to them and this testimony was material to the case.”
 
 Id.
 
 at 893(quoting
 
 Penton v. State,
 
 106 So.2d 577, 580 (Fla. 2d DCA 1958) (finding reversible error where defense counsel agreed to the jury’s request for a read-back of material testimony, but the trial court failed to have it read back due to confusion as to whether a transcript was available)).
 

 We disagree with
 
 LaMonte.
 
 In
 
 La-Monte,
 
 the court did not consider the possibility that defense counsel’s silence may have been strategic. Of course, we do not know defense counsel’s reason for not going along with the jury’s request in
 
 La-Monte,
 
 but there could be any number of reasons, including that defense counsel hoped the jury would remain confused about the officer’s testimony and, therefore, be unable to reach a verdict beyond a reasonable doubt. To find fundamental error in a trial court’s refusal to read back testimony would allow defense counsel to sit back in silence while the trial court errs and then raise the error on appeal once it is clear that the strategy failed. Such an approach is the type of gamesmanship the contemporaneous objection rule was designed to prevent.
 
 See Sailor,
 
 816 So.2d at 184;
 
 accord Farrow,
 
 573 So.2d at 163;
 
 cf. Coulliette v. State,
 
 949 So.2d 1078, 1078 (Fla. 1st DCA 2007) (declining to find fun
 
 *832
 
 damental error in improper questioning of the defendant where the court could not “rule out the possibility that defense counsel may have allowed such questioning to continue as part of her trial strategy”).
 

 The facts of the instant case illustrate the point that the failure of a defense attorney to request instructions on the availability of a read-back may be strategic. In this case, the testimony the jury requested was material to count III. However, the testimony was detailed, descriptive, and disturbing, and if the jury remembered and believed that testimony, it established the crime of sexual battery on a child.
 
 See
 
 § 794.011(l)(h), Florida Statutes (1993) (defining sexual battery, in pertinent part, as “oral, anal, or vaginal penetration by, or
 
 union with,
 
 the sexual organ of another”) (emphasis added). Additionally, the testimony included the victim’s statements that she had a vivid memory about this incident and that it was the offense that bothered her the most. While we do not know the defense counsel’s reasons for failing to request that the jury be informed that this testimony could be read back, we cannot ignore the fact that defense counsel may have believed that it was not in Appellant’s best interests to have this testimony emphasized. For this reason, we decline to find fundamental error in the trial court’s failure to advise the jury, sua sponte, of the availability of a read-back at the court’s discretion.
 

 Finding no preserved, reversible error, we AFFIRM.
 

 No further motions for rehearing will be entertained. The Clerk is directed to issue the mandate forthwith.
 

 VAN NORTWICK and ROWE, JJ., concur.
 

 [1]
 

 . It should be noted that
 
 Jackson
 
 is in conflict with an opinion issued by its sister court in
 
 State v. Griswold,
 
 98 Wash.App. 817, 991 P.2d 657, 663 (2000) (abrogated on other grounds by
 
 State v. DeVincentis,
 
 150 Wash.2d 11, 74 P.3d 119 (2003)) (disagreeing with
 
 Jackson
 
 and relying on
 
 State v. Thomas,
 
 110 Wash.2d 859, 757 P.2d 512 (1988), where the issue was not whether such reputation evidence was admissible, but rather whether an instruction on character evidence should have been given once evidence of the defendant’s reputation for sexual morality had been admitted). However, we are not persuaded by
 
 Griswold.
 
 Additionally, we note that the same court that issued
 
 Griswold
 
 later agreed with the
 
 Jackson
 
 court's observation that evidence of the defendant’s reputation for sexual morality "may be at odds with his actual character.”
 
 State v. Woods,
 
 117 Wash.App. 278, 70 P.3d 976, 978 n. 1 (2003). Thus, the key disagreement among the intermediate appellate courts of Washington is over whether the inherent unreliability of a person’s reputation for being sexually moral in one's relationships with children renders such evidence inadmissible, not whether such evidence is in fact unreliable.
 
 Griswold
 
 holds that the rules of evidence require admission of such evidence, 991 P.2d at 663, while
 
 Jackson
 
 holds that they do not, 730 P.2d at 1364, based on considerations similar to those expressed by our sister courts in
 
 Alvelo,
 
 769 So.2d at 477, and
 
 Russ,
 
 934 So.2d at 532.
 

 Griswold
 
 also expresses disagreement with the dicta in
 
 Jackson
 
 to the effect that sexual morality is not a character trait pertinent to the charge of indecent liberties. 98 Wash.App. 817, 991 P.2d 657;
 
 accord State v. English,
 
 150 Wash.App. 1051, 2009 WL 1763664, No. 37047-6-1I, at
 
 *6
 
 (Wash. Ct. App. June 23, 2009) (unreported) (noting that
 
 Griswold
 
 and
 
 Woods
 
 hold that sexual morality is a pertinent character trait in sexual offense cases). This disagreement does not concern us because, as discussed above, the crux of the
 
 Jackson
 
 reasoning is on the reliability of reputation evidence about this trait.
 
 See
 
 730 P.2d at 1364.