MAKAR, J.,
concurring in part, dissenting in part.
I concur in Judge Bilbrey’s opinion, but write separately to highlight that the double jeopardy problem in this case stems from a poorly-drawn information and the lack of jury instructions and a verdict form that assures us that the jury actually found that each violation of the traveling and solicitation counts charged against Lee was based on separate and distinct acts. Adequate adjudicative tools exist to protect against the type of double jeopardy problem presented, but they were not used in this case, making it impossible to conclude that a constitutional violation did not occur. Because a double jeopardy violation is universally deemed to fundamentally offend state and federal constitutions, we have an “unrenunciable judicial duty” to remedy such a violation even if not raised or preserved by the parties. Hendricks v. State, 34 So.3d 819, 828 (Fla. 1st DCA 2010); Bishop v. State, 21 So.3d 830, 832 (Fla. 1st DCA 2008).
Turning to the information, it charged Lee with three counts: (1) traveling to meet a minor to engage in sexual contact after using a computer to solicit the illegal act (“traveling”);[25] (2) unlawfully using a two-way communications device (a cellphone) to facilitate commission of a felony (“communications”);[26] and (3) using a computer to facilitate or solicit sexual conduct with a person believed to be a child (“solicitation”).[27]
On the face of the information, a potential double jeopardy problem is immediately apparent, as Lee pointed out below: the solicitation charged in Count 3 is subsumed in the traveling charge in Count 1. See State v. Shelley, 176 So.3d 914, 919 (Fla. 2015) (“[Bjecause the statutory elements of solicitation are entirely subsumed by the statutory elements of traveling af *373 ter solicitation, the offenses are the same” for purposes of the double jeopardy test in section 775.021(4), Florida Statutes.”). This problem is exacerbated because Count 3 of the information charged that Lee used a computer to engage in solicitations “on one or more occasions” over ten days. (Emphasis added). As charged, the jury need only find one solicitation to find Lee guilty as to Count 3. But to also prove the traveling violation in Count 1, an additional solicitation violation—separate and distinct from the one upon which the jury found a violation in Count 3—must be shown to avoid a double jeopardy violation. Stated differently, to uphold concurrent convictions on Counts 1 and 3 as alleged in the information against Lee, there must be a basis in the record for concluding that the jury was told and understood that it must actually find at least two separate and distinct solicitation violations. Absent an amended information or some means of channeling their decision-making, the jury was without guidance as to whether they could use just one solicitation violation as the basis for guilt as to Counts 1 'and 3; they were adrift without direction.
The information’s shortcomings led Lee to ask for dismissal on double jeopardy grounds, but the trial judge summarily denied the request, finding that “each offense contains an, element that the other does not,” which is erroneous in light of Shelley. The case proceeded to trial, the jury was given only standard criminal instructions, and a basic verdict form was used asking whether Lee was guilty as to each of the three counts “as charged in the information.”
Focusing, as we must, on how the jury was instructed and what it did, a glaring deficiency is obvious. At no point was the jury told it had to find at least two separate and distinct solicitation violations to hold Lee accountable on both the traveling count and the solicitation count. See Partch v. State, 43 So.3d 758, 761-62 (Fla. 1st DCA 2010) (“[Njeither the charging information nor the jury verdict form included language clearly predicating the disputed charges on two distinct sex acts.”). For all we know, jury deliberations ended when they found a solicitation violation, marked “guilty” on the verdict form as to Count 3, and used that same violation to mark “guilty” as to the traveling charge in Count 1. Nothing in the information, jury instructions, or verdict form provides any objective basis for excluding this unconstitutional result; no amount of rumination or hypothesizing changes this conclusion. As we said in Partch, the “ambiguous wording of the charging information and the jury verdict makes it impossible for this court to know if the jury convicted appellant for.one act of sexual battery or two distinct. acts.” Id. at 762. The same impossibility exists here.
Even if evidence supporting multiple solicitations can be gleaned from the appellate record, the jury was empowered to find only one solicitation violation as charged in the information; it was not told that it had to find an additional one to avoid a double jeopardy violation as to the traveling violation. For this reason, the en bane court’s conclusion that Lee’s convictions on the three counts were based on “separate and distinct acts” that “were not based on the same conduct” is unverifiable and thereby speculative on this record. The State did not charge separate and distinct counts of solicitation, the jury instructions were silent on the topic, and the verdict form provides no clue as to whether the jury found separate and distinct acts of solicitation as to Counts 1 and 3. No objective basis establishes that the jury found a solicitation violation other than the one, and only one, that underlies the violation it found as to Count 3; it didn’t know any better, given the problematic informa *374 tion and the lack of jury instructions/verdict form to guide its decision-making on this point. End result: we can’t unscramble the .egg in this case; Lee was denied the ability to protect against a double jeopardy violation and the State can’t rule out that his constitutional right wasn’t infringed.
. It bears emphasis that a double jeopardy violation is an error of fundamental proportion, so much so that it can be raised on appeal for the first time even if the issue was not raised, developed, or preserved. See Lippman v. State, 633 So.2d 1061, 1064 (Fla. 1994) (“The prohibition against double jeopardy is ‘fundamental.’”) (quoting Benton v. Maryland, 395 U.S. 784, 795-96, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) (“The fundamental nature of the guarantee against double jeopardy can hardly be doubted.”)). Indeed, a potential double jeopardy violation can be addressed sua sponte on appeal. Honaker v. State, 199 So.3d 1068, 1070 (Fla. 5th DCA 2016) (An appellate court “may sua sponte address fundamental error apparent on the face of the record” in a pro se, post-Shelley, traveling/solicitation case.).- When presented with an obvious constitutional problem, our obligation is to determine whether a violation exists, even if Lee had never raised the double jeopardy issue at trial or on appeal. Hendricks, 34 So.3d at 828 (“Despite, Appellant’s failure to argue fundamental error, we consider whether the purported error is of a fundamental nature because it is an appellate court’s ‘unrenunciable judicial duty’ to correct fundamental error even if it is not raised.”). That Lee agreed to the jury instructions and verdict form (or filed a motion to dismiss that was denied) is immaterial here under double jeopardy- fundamental error analysis, particularly so when his attempt to raise the constitutional issue was summarily dismissed.
Here, Lee’s counsel presciently pointed out the potential for a double jeopardy violation, but erroneously was denied relief at any point on the mistaken view that solicitation is not subsumed in a traveling violation. Under Shelley, that view is wrong. Because Lee established the potential for a significant double jeopardy violation that was dismissed and thereby unaddressed below, the most reasonable approach in this case is to presume such a violation unless the State can establish the contrary, much like was done in Dell’Orfano v. State, 616 So.2d 33, 36 (Fla. 1993), which placed the burden on the State in a double jeopardy case to overcome the presumption where the subsequent prosecution is based on the same defendant, crime, time, and victim. Id. (holding that “wherever there is doubt that the State has met its burden, the trial court must find a double jeopardy bar if it also concludes that the State either was aware of or could have discovered the newly charged offensés through due diligence in the first prosecution” in a subsequent prosecution" case). As in Dell’Orfano, the existence of a potential (if not obvious, in this case) double jeopardy problem justifies the State having to prove the absence of a violation. After all, Lee had no way to do so in the trial court, which dismissed his double jeopardy concerns at the outset. Whether or not he was entitled to dismissal pre-trial doesn’t matter because he was entitled to have his double jeopardy claim addressed at some point,[28] which did *375 not occur. Lee thereby has met his burden of demonstrating error of constitutional significance, shifting the burden to State to demonstrate no double jeopardy violation occurred.
In this regard, our review in this case is not one of evidentiary sufficiency as to whether five solicitations could have been established at trial; if the State had charged five counts of only solicitation (without a traveling charge), it is likely this record would support upholding convictions on those five counts. But that is not what this case is about. Instead, it is about constitutional sufficiency, that being whether the charges in the information and the jury instructions/verdict form give us any basis to conclude that the double jeopardy violation about which Lee complained does not exist. Because that can’t be done on this record, vacation of the solicitation count is the appropriate remedy under these unique circumstances post-Shelley.
As a final note, the double jeopardy problem in this case has straightforward solutions that impose no significant burden on the State, which has tremendous strategic leeway in deciding which charges to assert in this class of cases. One is for an information to set forth charges in a way that lessens or avoids a potential double jeopardy violation; we don’t want a jury that finds only one solicitation to convict a defendant of two crimes because an information is unclear. The Legislature has given the State much authority as to the types of crimes charged in this case, specifically saying that multiple counts of solicitation are permissible.[29] Carefully crafted counts—that don’t overlap in violation of Shelley—are workable in most, if not all, cases. Indeed, this approach was suggested in McCarthy v. State, 193 So.3d 1059, 1059 (Fla. 1st DCA 2016), which involved a double jeopardy violation arising from “a single count of unlawful use of a computer service and a single count of traveling to meet a minor; both of these charges were based on the same conduct.” In a footnote, the panel said:
We note that the outcome of this case would have been different if the State had charged McCarthy with multiple counts of solicitation and traveling based on different conduct. See Meythaler v. State, 175 So.3d 918, 919 (Fla. 2d DCA 2015) (vacating conviction and sentence for solicitation where information alleged only single counts of solicitation and traveling based on the same conduct, but noting that if the State had amended the information to allege additional communications that occurred, these counts would have survived).
Id. at 1059, n.1. By extension, the outcome of Lee’s case would have been different had the State charged Lee “with multiple counts of solicitation and traveling based on different conduct.” Id. Charging one count each of traveling and solicitation, without specifying they’re based on differ *376 ent conduct, is a recipe for double jeopardy disaster.
The other solution is to use a jury instruction and/or verdict form that tells jurors they need to find separate and distinct acts of solicitation to support both a traveling violation and a solicitation violation.[30] A jury instruction saying that “a conviction on a traveling count cannot be based on the same act of solicitation used to convict the defendant on the solicitation count” or the like would guard against a constitutional violation, even if one or multiple counts of solicitation are alleged. Here, neither the information, the jury instructions, nor the verdict form constrained the jurors from wading into an insoluble double jeopardy problem, which appeared on the face of the information and thereafter was not addressed.
[[Image here]]
Double jeopardy jurisprudence is among the most confusing and complex,[31] generating challenging conundrums and resulting often in widely divergent court decisions analyzing similar issues; this phenomenon continues post-Shelley, as Florida courts navigate new and confounding questions. That said, this case presents the simple question of whether Lee, having brought a meritorious double jeopardy problem to the trial court’s attention, is entitled to relief when our review of the record cannot possibly exclude the precise violation about which he complained. Because we are in the business of protecting constitutional rights, for even those who commit repugnant acts, the question answers itself.

. § 847.0135(4)(a), Fla. Stat. (2013).

. § 934.215, Fla. Stat. (2013).

.§ 847.0135(3)(a), Fla. Stat. (2013).

. See State v. Sholl, 18 So.3d 1158 (Fla. 1st DCA 2009) (finding ”[w]hen an information contains two or more charges which amount to the same offense, '[djouble jeopardy concerns require only that the trial judge filter out multiple punishments at the end of the trial, not at the beginning’ ”) (citation omitted). Sholl doesn't mean trial judges must put their heads in the sand from the start until the end of trial, ignoring obvious double jeopardy *375 problems raised pre-trial in a motion to dismiss or otherwise. Preventing a multi-vehicle pileup is far better than disentangling its wreckage. In addition, a motion to dismiss in this context is a well-accepted practice, so much so that the State views it as necessary to preserve a double jeopardy issue, see, e.g, Fravel v. State, 188 So.3d 969, 971 (Fla. 4th DCA 2016); it is not an "improper” motion to be ignored. After Shelley, trial judges should consider such motions as invitations to avoid constitutional error, not as "improper” ones to be automatically denied.

. § 847.0135(3)(b), Fla. Stat. ("Each separate use of a computer online service, Internet service, local bulletin board service, or any other device capable of electronic data storage or transmission wherein an offense described in this section is committed may be charged as a separate offense.”).

. This recommendation was made years ago in Judge Cowart's concurrence in Barnhill v. State, 471 So.2d 160, 162 (Fla. 5th DCA 1985), where he said: "Often violations of double jeopardy are discernible as a matter of law, but when the issue of double jeopardy turns on a factual issue, as in this case, appropriate jury instructions and verdicts should be given the jury to permit it to make the necessary factual distinctions to effectuate the double jeopardy constitutional prohibition."

. Albernaz v. United States, 450 U.S. 333, 343, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981) ("[T]he decisional law in the area is a veritable Sargasso Sea which could not fail to challenge the most intrepid judicial navigator.”). Bounded by four different ocean currents that form a massive clockwise-circulating sea vortex, the Sargasso Sea is a unique region in the North Atlantic Ocean known for its seaweed and clear blue water, depicted “in literature and media as an area of mystery,” most notably in Jules Verne’s 20,000 Leagues Under the Sea. See Sargasso Sea, Wikipedia; https://en. wikipedia.org/wiki/Sargasso_Sea/ (last visited April 27, 2017).