SLEET, Judge.
John Adams appeals his judgment and sentence for attempted robbery following a jury trial. Because we hold that the trial court did not commit fundamental error when it denied the jury’s request to see all transcripts of the testimony of the witnesses without informing the jury of its right to seek a read-back of trial testimony, we affirm.
I. Background
The State charged Adams with robbery by sudden snatching, a third-degree felony. See § 812.131, Fla. Stat. (2011). Allegedly, Adams attacked the victim outside of a bar at 2:00 a.m. and stole the victim’s $200 necklace. Adams maintained that the victim grabbed his crotch and that he retaliated by punching the victim in the chest. According to Adams, the necklace fell off the victim and Adams used it as a weapon to ward off the victim’s friend who threatened Adams with a box cutter.
At trial, three eyewitnesses to the event testified: the victim, the victim’s friend, and Adams. According to the testimony of the victim and his friend, while walking to their car, Adams suddenly appeared and *978 offered to sell marijuana to someone in the parking lot. When the victim and his friend tried to walk to their car, Adams punched the victim and threw him to the ground. The necklace fell off and Adams grabbed it and ran. The victim pursued Adams while his friend called the police. The victim and his friend denied having a box cutter and testified that the victim owned the necklace and that Adams was the assailant.
A St. Petersburg police officer testified that Adams was intoxicated, that he insisted he was the victim who was robbed of the necklace, and that he had the necklace in his front pocket when he was arrested. According to the officer, Adams never indicated that the victim’s friend had a weapon.
During cross-examination, Adams admitted that he lied to the police about being the victim and having a sales receipt for the necklace. He also admitted to eleven felony convictions.
II. Jury Questions
During jury deliberations, the jury sent out two notes. In its first note, the jury indicated that it “would like to see all the depositions and all the [sic] Officer Brick-er’s police report. Also transcripts of all the testimony.” The court assembled the State and the defense and informed them that “[w]hat the court will say to the jury when it brings it in is you have all the evidence that has been admitted in this trial. You must rely upon your individual and collective recollection of the evidence. There are no transcripts of testimony in existence.” Counsel for both parties did not have any objections to the court’s proposed answer. In fact, defense counsel seemed to agree that the law requires the proposed answer.
When the jury returned' to the courtroom, the court answered its question, saying:
I have sent back with you all the documents that were received into evidence. Depositions were not part of evidence, nor was Officer Bricker’s police report. Plus there are no transcripts of all the testimony in existence. Here’s the bottom line: You must use your individual and collective recollection of the facts. You must then determine the facts, and then you must apply the law that I’ve given you. So with that, I’ll have you return to the jury room for further deliberations.
The trial record does not indicate how long the jury deliberated before the second note, and neither, the State nor Adams indicated whether the interim time was significant. The jury’s second note asked: “What happens if we can’t come to a unanimous decision?” The court once again summoned counsel and indicated it would advise the jury that he would have to declare a mistrial. Again, neither the State nor the defense had any objections to the proposed answer. When the jury returned to the courtroom, the court advised them that it would have to declare a mistrial. Thereafter, the jury resumed its deliberations and returned with a guilty verdict on the lesser included offense of attempted robbery.
III. Analysis
On appeal, Adams argues that the trial court committed reversible error when it denied the jury’s request without informing it of the possibility of a read-back. There is no rule of criminal procedure providing that a jury may view a transcript of the proceedings. See Fla. R.Crim. P. 3.400(a) (omitting transcripts from the list of items a jury may view in the deliberation room). However, rule *979 3.410 provides that a trial court may, in its discretion, have portions of the trial testimony read back to the jury upon request. A trial court has wide discretion over whether to read back testimony. Hazuri v. State, 91 So.3d 836, 841 (Fla.2012); Avila v. State, 781 So.2d 413, 415 (Fla. 4th DCA 2001). Nonetheless, a trial court “may not mislead a jury into believing that a read-back was prohibited.” Hazuri, 91 So.3d at 843. The Florida Supreme Court has adopted the following two rules to be applied by a court when responding to a jury request for transcripts: (1) a trial judge should not use any language that would mislead a jury into believing that read-backs are prohibited and (2) when denying a request for transcripts, the trial judge is to inform the jury of the possibility of a read-back. Id. at 846; see also State v. Barrow, 91 So.3d 826, 834 (Fla.2012).
This case is distinguishable from Hazuri and Barrow where the defense objected and specifically sought to have the trial court advise the jury of the right to request a read-back. See Hazuri, 91 So.3d at 839; Barrow, 91 So.3d at 831. Here, defense counsel did not object, but agreed to the trial court’s proposed response and thereby failed to preserve any possible error for appellate review. See Rodas v. State, 967 So.2d 444, 446 (Fla. 4th DCA 2007) (“The general rule is that a reversal in a criminal case must be based on a prejudicial error that was preserved by a timely objection in the trial court.”). Although Adams does not argue that the error was fundamental error, we consider whether the purported error is' of a fundamental nature because it is an appellate court’s “unrenunciable judicial duty” to correct fundamental error. Bain v. State, 730 So.2d 296, 302 (Fla. 2d DCA 1999), called into doubt on other grounds by, State v. Jefferson, 758 So.2d 661, 664 (Fla. 2000). Thus, the threshold issue is whether the trial court’s failure to inform the jury of the possibility of a read-back constituted fundamental error. See Delestre v. State, 103 So.3d 1026, 1028 (Fla. 5th DCA 2012).
Fundamental error is “error that ‘reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.’ ” Brooks v. State, 762 Sd.2d 879, 899 (Fla.2000) (quoting McDonald v. State, 743 So.2d 501, 505 (Fla.1999)). Moreover, error is fundamental only if it “goes to the very heart of the judicial process” and “extinguishes a party’s right to a fair trial,” such that it results in a miscarriage of justice. Martinez v. State, 933 So.2d 1155, 1159 (Fla. 3d DCA 2006).
The Florida Supreme Court has cautioned that “[t]he doctrine of fundamental error should be applied only in rare cases where a jurisdictional error appears or where the interests of justice present a compelling demand for its application.” Smith v. State, 521 So.2d 106, 108 (Fla.1988). The Fifth District has previously stated that “[e]ven if a court’s failure to inform the jury of its right to request a read-back in a case ... were error, it is hard to conceive that it would be fundamental error.” Frasilus v. State, 46 So.3d 1028, 1031 (Fla. 5th DCA 2010). This reluctance to find fundamental error is to discourage “the creation of ‘gotchas’ whereby the defense is allowed to sit on its rights and say nothing until after it sees whether the jury returns an adverse verdict.” Hendricks v. State, 34 So.3d 819, 830 (Fla. 1st DCA 2010) (quoting Jones v. State, 571 So.2d 1374, 1376 n. 3 (Fla. 1st DCA 1990)); see also Sailor v. State, 816 So.2d 182, 184 (Fla. 1st DCA 2002) (noting that the contemporaneous objection rule was designed to prevent the type of *980 “gamesmanship” that occurs when “a party waits to see if the jury renders a favorable verdict while the party withholds a claim of error in the process”). Thus, an error of omission in jury instructions is fundamental only when “the omission is pertinent or material to what the jury must consider in order to convict.” State v. Delva, 575 So.2d 648, 645 (Fla.1991).
In Delestre, the trial court was confronted with an almost identical request from the jury. 103 So.3d at 1027. Although the Delestre jury did not request depositions and police reports, it specifically requested transcripts of “all testimony.” Id. As in this case, defense counsel agreed .that the court should advise the jurors that it “was not going to have all testimony read back but they were to rely upon the collective memory of the jury in determining what the testimony was.” Id. The Fifth District affirmed Delestre’s convictions and sentences on appeal.
It is difficult to conceive that the trial court’s failure to inform the jury of its right to a read-back of testimony amounted to fundamental error in this case. Rather than arguing that the jury could have been confused about the facts and needed a read-back of testimony, the defense affirmatively agreed with the court’s responsive instructions. After the second jury note, it may have appeared to Adams that the trial court would have to declare a mistrial, which may have been more appealing to him than asking the court to allow the jury to review the testimony. Therefore, we hold that the court’s failure to instruct the jury on its right to request a read-back was not fundamental error in this case.
We also note that Adams’ reliance on LaMonte v. State, 145 So.2d 889 (Fla: 2d DCA 1962), is misplaced. As explained in Frasilus, when this court issued the La-Monte decision in 1962, “section 919.05, Florida Statutes, by its express terms, made a read-back mandatory, upon a jury’s request.” 46 So.3d at 1032. Section 919.05 was ultimately repealed in light of the adoption of the Florida Rules of Criminal Procedure and was superseded by rule 3.410. The legislature removed the mandatory language in 1972; according to the committee note, the purpose of the change was to make the rule discretionary. In re Florida Rules of Criminal Procedure, 272 So.2d 65, 116 (Fla.1972); see also Frasilus, 46 So.3d at 1032.
Accordingly, we affirm.
Affirmed.
VILLANTI, J., Concurs.
KELLY, J., Concurs in result only.