# Third District Court of Appeal

## State of Florida

Opinion filed December 23, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D13-3231
Lower Tribunal No. 10-27201
_____

**Derrick Johnson,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Jose L. Fernandez, Judge.

Law Offices of Andrew Rier, and Daniel Tibbitt, for appellant.

Pamela Jo Bondi, Attorney General, and Nikole Hiciano, Assistant Attorney General, for appellee.

Before ROTHENBERG, SALTER, and LOGUE, JJ.

ROTHENBERG, J.

The defendant, Derrick Jackson, appeals his conviction for second degree

murder with a firearm, arguing that: (1) the trial court abused its discretion by allowing the State to peremptorily strike an African American juror, Mr. Guthrie, where the State's race-neutral explanation was not supported by the record, and (2) defense counsel provided ineffective assistance of counsel on the face of the record because, in response to the jury's request during deliberations to have access to the two eyewitnesses' trial testimony, defense counsel agreed that the trial court should instruct the jurors to rely on their own recollections, without informing the jurors of the possibility of a readback of the testimony. Because the record demonstrates that the State advanced a factually accurate race-neutral reason for peremptorily challenging Mr. Guthrie, and because there is a plausible strategic reason for defense counsel agreeing that the trial court should instruct the jurors to rely on their own recollection, we affirm.

During voir dire, the State informed the jury that a person may legally use deadly force to defend himself under certain circumstances. Thereafter, the State asked the jurors that if the law in Florida requires that ten criteria must be met before a person can legally use deadly force, was there anyone on the jury that would find that if the defendant only established nine out of the ten criteria, that would that be "good enough." The State immediately followed up by asking the jurors whether the defendant must establish all ten criteria before they would find that the defendant legally used deadly force. Mr. Guthrie replied "no," which

2

suggested that Mr. Guthrie would not require the defendant to meet his burden and follow the law relating to the use of deadly force. However, after further explanation and questioning, Mr. Guthrie stated that he would follow the law on the use of deadly force.

After the State sought to peremptorily strike Mr. Guthrie, an African American, the trial court asked the State to provide a race-neutral explanation. The State asserted that although Mr. Guthrie ultimately stated that he would follow the law as it pertains to the use of deadly force, he initially expressed reservations about doing so. Thereafter, the trial court permitted the strike, finding that the State provided a race-neutral explanation.

At trial, the State presented the testimony of two eyewitnesses to the shooting. The first eyewitness, who knows the defendant, testified that the defendant did not shoot the victim. In contrast, the second eyewitness, who knows the defendant from the neighborhood, testified that the defendant shot the victim numerous times.

During deliberations, the jury sent a note to the trial court stating, "If permitted, we would like access to the testimony (audio or text) of the two eyewitnesses." Thereafter, the State suggested that the trial court instruct the jury to rely on their own recollection, unless the jury would like a readback of the testimony. After discussing that there was recent case law on the issue, the trial

court explained that the trial court has discretion as to whether the testimony will be read back to the jury, but the trial court cannot mislead the jury into believing that a readback is prohibited, and when the trial court denies the jury's request for transcripts, the trial court must inform the jury of the possibility of a readback.[1]

Thereafter, because the parties and the trial court were not clear what testimony the jury was referring to—trial testimony and/or statements made to the police—the trial court sent a note back to the jury asking if it was "referring only to the trial testimony of [the two eyewitnesses]." The jury clarified that it was referring only to the eyewitnesses' trial testimony. Defense counsel then suggested that the jurors should be instructed to rely on their own recollection, but they should be informed that if they still "can't figure it out, then there would be a readback." After the State voiced its concern, the defense counsel agreed that the jurors should simply be instructed to rely on their own recollection of the testimony, but if the jurors returned with another note, then the testimony should be read back to them. Following defense counsel's suggestion, the trial court specifically asked defense counsel if he agreed that the instruction should simply

---

[1] Although the trial court and the parties did not refer to a specific case, it appears they were discussing the Florida Supreme Court's decision in Hazuri v. State, 91 So. 3d 836, 846 (Fla. 2012), in which the Florida Supreme Court adopted the following two rules: "(1) a trial court should not use any language that would mislead a jury into believing read-backs are prohibited, and (2) when a jury requests trial transcripts, the trial judge should deny the request, but inform the jury of the possibility of a read-back."

4

tell the jurors that they should rely on their own recollection. In response, defense counsel stated, "I'm satisfied, after consulting with my client, that at least at this point, that I have consulted with him and he is fine with that." Defense counsel further noted that the jury had been deliberating for only forty minutes, but if they had been deliberating for three or four hours, "then I would I say, they really need a readback." The trial court read the proposed instruction to the lawyers and the defendant, and defense counsel told the trial court that he was "fine" with the instruction.

The jury found the defendant guilty of second degree murder, and he was later sentenced. The defendant's appeal follows.

The defendant contends that the trial court abused its discretion by allowing the State to peremptorily strike Mr. Guthrie, an African American, because the State's race-neutral explanation was not factually supported by the record. We disagree.

Without rehashing the facts, based on our review of the record, we conclude that the State's race-neutral explanation for striking Mr. Guthrie was factually supported by the record. Specifically, although Mr. Guthrie ultimately stated that he would follow the law pertaining to the use of deadly force, he initially indicated that he would not. Accordingly, we conclude that the trial court did not abuse its discretion by allowing the State to peremptorily strike Mr.

Guthrie.

The defendant also claims that defense counsel was ineffective on the face of the record because, in response to the jury's question during deliberations to have "access" to the two eyewitnesses' trial testimony, defense counsel agreed that the trial court should instruct the jurors to rely on their own recollections, without informing the jurors of the possibility of a readback. Because it is clear that defense counsel was aware of the law on this issue, that the record reflects that he consulted with the defendant before agreeing with the instruction given and that defense counsel's decision may have been strategic, we do not find ineffective assistance of counsel on direct appeal.

The defendant acknowledges that defense counsel did not object to the trial court's response to the jury's question, and that the error does not amount to fundamental error. Gonzalez v. State, 136 So. 3d 1125 (Fla. 2014); Tate v. State, 136 So. 3d 624, 631 (Fla. 2013); Adams v. State, 122 So. 3d 976 (Fla. 2d DCA 2013) (holding that the trial court's failure to inform the jury of the possibility of a readback of the testimony was not fundamental error); Hendricks, 34 So. 3d 819, 828 (Fla. 1st DCA 2010). However, the defendant argues that this Court should nonetheless reverse on direct appeal because trial counsel's representation was ineffective on the face of the record because there was no plausible strategic rationale for defense counsel agreeing to the State's request that the jurors be

instructed to rely on their own recollection, without informing them of the possibility of a readback. Based on the record before us, we cannot conclude that the defense counsel's decision was not strategic. Specifically, defense counsel noted that the jury had only been deliberating for forty minutes, but if it had been deliberating for three or four hours, he would agree that "they really need a readback." Further, contrary to the defendant's assertion, it is not clear that a readback of the two eyewitnesses' testimony could only have benefitted the defendant. As stated earlier, the two eyewitnesses clearly contradicted each other—one testified that the defendant shot the victim, whereas the other testified that the defendant did not shoot the victim—and it is possible that defense counsel believed that the eyewitness who testified that the defendant did shoot the victim appeared to be more credible. Because it is not clear on the face of the record that defense counsel's decision was not strategic, we affirm.

Affirmed.